J-A04044-19

2019 PA Super 155

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JOHN LEKKA :
:
Appellant : No. 772 EDA 2018

Appeal from the Judgment of Sentence October 4, 2017
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0001295-1978

BEFORE: LAZARUS, J., KUNSELMAN, J., and COLINS*, J.

OPINION BY COLINS, J.: **FILED MAY 10, 2019**

Appellant, John Lekka, appeals from the judgment of sentence, imposed upon resentencing for his 1978 conviction for first-degree murder,[1] of a minimum term of 45 years and a maximum term of life imprisonment and an order to pay restitution in the amount of $1,000 to his victim's family. We vacate the order of restitution and affirm the judgment of sentence in all other respects.

We briefly recount the underlying facts in this matter, which are set forth in a stipulation by the parties that was entered into the record at the sentencing hearing. Court's Ex. 2. On November 13, 1978, Appellant, then aged 17, and Robert Buli, then aged 16, were working on Buli's pickup truck at Buli's house when Diana Goeke, Buli's ex-girlfriend who was aged 17,

_____

[1] 18 Pa.C.S. § 2502(a).

* Retired Senior Judge assigned to the Superior Court.

arrived. Appellant, Buli and Goeke walked to a woody area behind a school where Buli grabbed Goeke in a headlock, yelling at Appellant repeatedly to hit Goeke. Appellant grabbed a piece of wood and hit her on the head, knocking Goeke to the ground. Buli and Appellant then each hit Goeke multiple times in the head with a metal pipe. Appellant and Buli proceeded to drag Goeke's body to a dug-out, earthen fort and left her there. Appellant and Buli returned later that evening with Appellant's sister's boyfriend at which point they heard Goeke gurgling inside the fort. The three young men then carried a 225-pound piece of concrete and placed it over the opening of the fort. Buli stomped on the concrete and it fell inside the fort onto Goeke, crushing her skull.

On November 16, 1978, Appellant and Buli confessed to their crimes in police interviews, and they were charged with first-degree murder and conspiracy.[2] On September 17, 1979, Appellant and Buli pleaded guilty to criminal homicide[3] and conspiracy. A degree of guilt hearing took place on September 20, 1979, at which point Appellant and Buli were found guilty by the trial court of first-degree murder. On November 15, 1979, Appellant was sentenced to life imprisonment on the murder charge and a consecutive period of 5 to 10 years of incarceration on the conspiracy charge.

_____

[2] 18 Pa.C.S. §§ 2502(a) and 903, respectively.
[3] 18 Pa.C.S. § 2501.

On July 8, 2010, Appellant filed a petition under the Post Conviction Relief Act (PCRA)[4] in which he argued that his mandatory life sentence was unconstitutional under the Eighth and Fourteenth Amendments of the United States Constitutions. The PCRA court denied the petition without a hearing pursuant to Rule of Criminal Procedure 907. Appellant appealed the denial to this Court, which affirmed the PCRA court's decision.

In 2012, the United States Supreme Court held in *Miller v. Alabama*, 567 U.S. 460 (2012), that a mandatory sentence of life without possibility of parole for individuals who were under the age of 18 at the time of the offense violates the prohibition on cruel and unusual punishment in the Eighth Amendment of the United States Constitution. *Id.* at 479-80. In *Miller*, the Supreme Court listed various factors that a court must consider when imposing a life-without-parole sentence on a juvenile offender including the "hallmark features" of youth, such as "immaturity, impetuosity, and failure to appreciate risks and consequences." *Id.* at 476-78. This Court summarized the *Miller* factors in *Commonwealth v. Knox*, 50 A.3d 732 (Pa. Super. 2012), which were subsequently adopted by our Supreme Court in *Commonwealth v. Batts*, 66 A.3d 286 (Pa. 2013) (*Batts I*), as follows:

> [A]t a minimum [the sentencing court] should consider a juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of his participation in the crime, his family, home and neighborhood environment, his emotional maturity and

---

[4] 42 Pa.C.S. §§ 9541–9546.

- 3 -

development, the extent that familial and/or peer pressure may have affected him, his past exposure to violence, his drug and alcohol history, his ability to deal with the police, his capacity to assist his attorney, his mental health history, and his potential for rehabilitation.

*Id.* at 297 (quoting *Knox*, 50 A.3d at 745).

Appellant filed a second PCRA petition on August 23, 2012, seeking the vacation of his life sentence pursuant to *Miller*. The PCRA court entered an order denying Appellant's second PCRA petition on November 7, 2014, which Appellant appealed to this Court. While the appeal of Appellant's second PCRA petition was pending before this Court, the U.S. Supreme Court ruled in *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016), that *Miller*'s prohibition of mandatory life-without-parole sentences for juvenile offenders was a substantive rule that is retroactive in state cases on collateral review. *Id.* at 736. On March 23, 2016, this Court issued a decision vacating Appellant's mandatory life-without-parole sentence in light of *Montgomery* and remanding for resentencing.

Appellant's resentencing hearing took place over the course of three days in October 2017. At the conclusion of the hearing, the sentencing court sentenced Appellant to a minimum of 45 years and a maximum of life imprisonment on the first-degree murder charge with credit for time served. Sentencing Order, 10/5/17; N.T., 10/5/17, at 6. This sentence was ordered to run concurrently with the 5-to-10 year term of incarceration sentence previously imposed in 1979 for the conspiracy charge. Sentencing Order, 10/5/17; N.T., 10/5/17, at 7. In addition, the sentencing court ordered

Appellant to pay $1,000 in restitution to the victim's heirs for funeral expenses.[5] Sentencing Order, 10/5/17; N.T., 10/5/17, at 6-7. Appellant filed a motion for reconsideration of the sentence; at the hearing for the motion, Appellant attempted to submit his Exhibit D-1, which analyzed the disposition of the resentencing for each of the 120 juvenile offenders in Pennsylvania who were resentenced pursuant to **Miller** and **Montgomery**. On March 5, 2018, the sentencing court denied Appellant's motion for reconsideration and the admission of Exhibit D-1 into evidence. N.T., 3/5/18, at 3, 5-6. Appellant then filed a timely appeal of the judgment of sentence.[6]

Appellant presents six issues for our review:

1. Was the Appellant's sentence, ten years higher than that decreed by the Pennsylvania Supreme Court as a starting point for sentencing pre-2012 juveniles previously sentenced to life without parole, an abuse of discretion when the departure from that starting point was not explained?

---

[5] The sentencing court also initially directed Appellant to pay costs associated with his resentencing. Sentencing Order, 10/5/17; N.T., 10/5/17, at 7. At the January 18, 2018 hearing on Appellant's motion for reconsideration of sentence, the sentencing court acknowledged that the imposition of costs was in error, and the sentencing court later amended the sentencing order to reflect that costs were waived and notified the Department of Corrections. Sentencing Order, 10/5/17 (as amended on 5/3/18); N.T., 1/18/18, at 47-48; Letter of Bucks County Clerk of Courts, 5/7/18; **see also Commonwealth v. Davis**, ___ A.3d ___, 2019 PA Super 99, *6-9 (filed March 29, 2019) (imposition of costs in resentencing a juvenile offender pursuant to **Miller** and **Montgomery** was an illegal sentence under 16 P.S. § 1403 because that statute only permitted that the "costs of prosecution" be imposed).

[6] Appellant filed his statement of errors complained of on appeal on March 29, 2018, and the sentencing court entered its opinion on May 16, 2018.

2. Was the Appellant's sentence excessive when the sentencing court focused on what it inaccurately felt was the [Appellant]'s lack of insight and lack of acknowledgment of his role in the offense, and the nature of the crime, to the exclusion of an exemplary prison record and uncontradicted evidence that he was unlikely to re-offend?

[3]. Did the sentencing court err in excluding evidence of sentences imposed throughout the Commonwealth in similar cases to measure whether its sentence promoted uniformity and certainty in sentencing?

[4]. Did the sentencing court err in not applying the [] factors set forth in Miller v. Alabama?

[5]. Is a sentence of forty-five years to life to a 17-year-old convicted of first degree murder an illegal de facto life sentence that cannot be imposed when the Commonwealth certified it will not seek a life sentence?

[6]. Was a sentence of restitution imposed in the absence of any claim for it or evidence of the amount illegal?

Appellant's Brief at 3-4 (questions reordered to facilitate disposition; duplicative question omitted).

Appellant's first two issues relate to the discretionary aspect of his sentence. Where an appellant challenges the discretionary aspect of a sentence, we must engage in a four-part analysis to determine:

(1) whether the appeal is timely; (2) whether Appellant preserved his [] issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [pursuant to Rule of Appellant Procedure 2119(f), Pa.R.A.P. 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is [not] appropriate under the [S]entencing [C]ode.

***Commonwealth v. Williams***, 198 A.3d 1181, 1186 (Pa. Super. 2018) (citation omitted).

Appellant filed a timely notice of appeal, preserved his appellate issue in a post-sentence motion, and included in his brief the concise statement required by Rule 2119(f). Appellant's Brief at 34-38.[7] Therefore, we will address the issue of whether Appellant has raised a substantial question that his sentence is not appropriate under the Sentencing Code.

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Manivannan*, 186 A.3d 472, 489 (Pa. Super. 2018) (internal citations and quotation marks omitted).

In his first issue, Appellant argues that the sentencing court abused its discretion by not considering our Supreme Court's statement in *Commonwealth v. Batts*, 163 A.3d 410, 457-58 (Pa. 2017) (*Batts II*), that a sentencing court resentencing a juvenile offender should "seek guidance" from the 35-year mandatory minimum for a 17-year old offender convicted of first-degree murder under Section 1102.1(a)(1) of the Crimes Code, 18 Pa.C.S. § 1102.1(a)(1). Appellant contends that this claim is a substantial question because the sentencing court imposed a sentence 10 years beyond

---

[7] While Appellant did not include within his Rule 2119(f) statement a discussion of the reasons relied upon for his appeal with respect to the argument that the sentencing court erred by not considering the *Miller* factors, the Commonwealth has not objected, and therefore we will not find that the absence of a Rule 2119(f) statement with respect to this issue results in waiver. *White*, 193 A.3d at 982.

the minimum without articulating any explanation for why it deviated from the minimum proposed by our Supreme Court. We find this claim does present a substantial question that warrants our review. ***See Commonwealth v. Macias***, 968 A.2d 773, 776 (Pa. Super. 2009) (failure to set forth adequate reasons for the sentence imposed presents a substantial question).

Our standard of review for challenges to the discretionary aspects of sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Conte***, 198 A.3d 1169, 1176 (Pa. Super. 2018) (citation omitted).

Section 1102.1 of the Crimes Code was enacted in the wake of ***Miller*** and sets forth the sentences to be imposed upon juvenile offenders who are convicted of first- or second-degree murder on or after June 25, 2012, the date ***Miller*** was issued. Under this statute, a juvenile offender convicted of first-degree murder who was less than 18 years old but at least 15 years old at the time of the offense would be subject to a sentence of a minimum of 35 years in prison and a mandatory maximum of life imprisonment, while an offender who was 14 years old or under would be subject to a minimum of 25 years' imprisonment and a mandatory maximum of life imprisonment. 18

- 8 -

Pa.C.S. § 1102.1(a). Section 1102.1 does not prohibit a sentencing court from imposing a minimum sentence greater than provided in the statute. 18 Pa.C.S. § 1102.1(e). The statute also sets forth a separate set of factors that a court must consider when determining whether to sentence a juvenile offender to life without possibility of parole, including age-related characteristics such as the defendant's mental capacity, maturity and degree of criminal sophistication. 18 Pa.C.S. § 1102.1(d).

In *Batts II*, our Supreme Court reviewed the life-without-parole sentence of the defendant, a juvenile offender who had been convicted in 2007 of first-degree murder and originally received a mandatory life-without parole, but then was ordered to be resentenced following *Miller*. *Batts II*, 163 A.3d at 418-21; *see also Batts I*, 66 A.3d at 295-97. The Court concluded that, in light of the sentencing court's own findings that the defendant was capable of rehabilitation, the life-without-parole sentence imposed upon resentencing violated the Eight Amendment prohibition on cruel and unusual punishment. *Batts II*, 163 A.3d at 436-39. The Court held that, in cases such as this where the Commonwealth does not seek to impose a life-without-parole sentence upon resentencing, the sentencing court should apply the traditional sentencing considerations of Section 9721(b) of the Sentencing Code, 42 Pa.C.S. § 9721(b), when fashioning its sentence. 163 A.3d at 460. In addition, the Court stated that "sentencing courts should be guided by the minimum sentences contained in section 1102.1(a) of twenty-five years for a first-degree murder committed when the defendant was less than fifteen years

old and thirty-five years for a first-degree murder committed when the defendant was between the ages of fifteen and eighteen." ***Id.*** at 458.

In this case, there is no doubt that the sentencing court followed the Supreme Court's instruction in ***Batts II*** to be guided by Section 1102.1(a)(1)'s 35-year minimum sentence. During the closing remarks at the sentencing hearing, both counsel for Appellant and counsel for the Commonwealth addressed the 35-year minimum of Section 1102.1(a)(1). N.T., 10/4/17, at 194-96, 199, 201, 217. Moreover, the sentencing court made comments during closing remarks that made clear that the court was aware of Section 1102.1(a). ***Id.*** at 195, 199. Indeed, the Sentencing Court explicitly recognized that the 35-year minimum of Section 1102.1(a)(1) operated as the "mandatory minimum."[8] ***Id.*** at 199 ("[COUNSEL FOR APPELLANT:]…He has served 39 years, which is going to be five years more than the guidelines [of Section 1102.1(a)] for a murder case. THE COURT: It's not the guidelines, it's the mandatory minimum.").

_____

[8] Though not argued by the parties, we note that this Court has held that the Section 1102.1(a) 35-year minimum that is mandatory by the statute's own terms for individuals convicted on or after June 25, 2012 is not mandatory for the resentencing of juveniles who were convicted prior to the effective date of that statute. ***Commonwealth v. Hicks***, 151 A.3d 216, 227-28 (Pa. Super. 2016). Though the Supreme Court in ***Batts II*** expressed that sentencing courts should look to Section 1102.1 as guidance and that this would further the goal of uniformity among the sentences of juveniles convicted of first-degree murder regardless of their date of conviction, the Court did not overrule ***Hicks*** and specifically declined to hold that Section 1102.1 was mandatory upon resentencing of a juvenile offender originally convicted before June 25, 2012. ***Batts II***, 163 A.3d at 458 n.25.

- 10 -

While the sentencing court did not explicitly reference Section 1102.1 when issuing the sentence, it provided ample explanation for imposing the sentence of 45-years-to-life imprisonment.  N.T., 10/5/17, at 2-6; *see infra*. Contrary to Appellant, we do not believe that *Batts II* imposes a requirement that sentencing courts state their exact reasons for departing from the 35-year minimum of Section 1102.1(a)(1).  Rather, the sentencing court here followed the directive of *Batts II* and addressed the general sentencing criteria of Section 9721(b) of the Sentencing Code in crafting its sentence. Accordingly, we conclude that Appellant's first issue lacks merit.  *Cf. Commonwealth v. Rush*, 162 A.3d 530, 543 n.10 (Pa. Super. 2017) ("[W]hen the record demonstrates that the sentencing court was aware of the guideline ranges and contains no indication that incorrect guideline ranges were applied or that the court misapplied the applicable ranges, we will not reverse merely because the specific ranges were not recited at the sentencing hearing.") (citation omitted); *Commonwealth v. Rodda*, 723 A.2d 212, 215-16 (Pa. Super. 1999) (*en banc*) (stating that there is no requirement that a sentencing court "evoke 'magic words' in a verbatim recitation of the guidelines range" and affirmance is proper "where the record has reflected that the court acted on a sound understanding of the sentencing range and imposed sentence accurately" (citation omitted)).

Next, Appellant argues that his sentence of 45 years to life imprisonment was unduly harsh and the sentencing court focused on his apparent lack of insight into his role in the murder of Goeke without

recognizing the extensive evidence that he presented of his rehabilitation during his years in prison. This issue presents a substantial question, and we therefore proceed to address the issue on its merits. *See Commonwealth v. Caldwell*, 117 A.3d 763, 769-70 (Pa. Super. 2015) (*en banc*) (holding an excessive sentence claim, in conjunction with an assertion that the court failed to consider mitigating factors, raises a substantial question).

As stated above, a sentencing court has broad discretion, and a sentence will only be reversed where the court misapplied or ignored the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision. *Conte*, 198 A.3d at 1176. "In every case in which the court imposes a sentence for a felony or a misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." *Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa. Super. 2014) (quoting *Commonwealth v. Mouzon,* 812 A.2d 617, 620-21 (Pa. 2002)). The sentencing court is required to consider the particular circumstances of the offense and the character of the defendant, with reference to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. *Id.* at 761.

At the sentencing hearing, Appellant presented evidence regarding his rehabilitation while in prison, including his education and work training and his role in counseling other prisoners. Appellant presented the testimony of a Catholic priest who stated that Appellant was a model inmate and described

his role in religious services and ministry. Appellant also presented the testimony of two former inmates who stated that discussions with Appellant had a positive impact on them and helped them to turn their lives around and live positive lives upon release from prison. A forensic psychologist who examined Appellant testified that he suffered physically abusive behavior from his father as a child that stunted his intellectual and emotional development, but that Appellant had shown extensive growth while in prison and testing revealed that he had an extremely low risk of recidivism. Finally, Appellant addressed the court regarding his difficult childhood, his role in the murder of Diana Goeke, and the work, educational, religious, and counseling programs he participated in while incarcerated. When asked during direct examination by his counsel why he went along with co-defendant Buli's plan to kill Goeke and then struck her at Buli's direction, Appellant said "I don't know." N.T., 10/4/17, at 82.

When announcing the sentence, the sentencing court acknowledged that it had considered all of the evidence presented by Appellant and read all of the exhibits he had presented. N.T., 10/5/17, at 6. The sentencing court analyzed the case pursuant to the three factors set out in Section 9721(b) of the Sentencing Code: protection of the public, the gravity of the offense and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b); *see also* *Batts II*, 163 A.3d at 460. The sentencing court first noted that Appellant had a difficult childhood, but had done "extremely well by all accounts since he's been incarcerated" and had no evidence of disciplinary problems in

prison. N.T., 10/5/17, at 3. The court stated that, while Appellant acknowledged his guilt, he had not offered a "true explanation" or "true insight" as to his role in the murder for which he was convicted. *Id.* at 3-4.

Turning to the protection of the public, the sentencing court noted Appellant's low risk of recidivism and his actions in avoiding the ever-present violence in prison. *Id.* at 4-5. Nevertheless, the sentencing court expressed reservation regarding Appellant's "lack of acknowledgement" for the murder of Goeke. *Id.* at 5. Finally, when discussing the gravity of the offense, the sentencing court stated that the murder was one of the "most serious of crimes," consisting of multiple brutal assaults over a period of time. *Id.* at 5-6.

We conclude that, in rendering the sentence on Appellant, the sentencing court applied the correct law, exercised its judgment without partiality, prejudice, bias, or ill will, and did not arrive at a manifestly unreasonable decision. The record reflects that the sentencing court engaged in a reasoned analysis of the Section 9721(b) sentencing factors with reference to the evidence presented at the sentencing hearing. The court discussed Appellant's difficult family history prior to the commission of the murder, his rehabilitation and work in assisting others while in prison, and his low predicted chance of recidivism. In addition, the sentencing court recognized the brutal nature and circumstances of the murder for which Appellant was convicted and Appellant's lack of insight into his role in the murder.

Appellant challenges the fact that the sentencing court overemphasized his apparent lack of insight into his role in the murder compared to his self-improvement that he has demonstrated while incarcerated. Such an argument is beyond the scope of review of an appellate court reviewing a sentencing decision. The balancing of the Section 9721(b) sentencing factors is the sole province of a sentencing judge. *Commonwealth v. Bricker*, 41 A.3d 872, 876 (Pa. Super. 2012). Furthermore, in evaluating Appellant's lack of insight, the "sentencing court is in a superior position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime." *Conte*, 198 A.3d at 1177 (citation and quotation marks omitted).

Next, Appellant challenges the decision of the sentencing court to deny admission to his Exhibit D-1 that he sought to introduce with his motion to reconsider his sentence. This exhibit included information compiled by the Juvenile Law Center on January 15, 2018 concerning the terms of the resentencing for the 120 juvenile offenders in Pennsylvania who had, as of the date of the report, been resentenced pursuant to *Miller* and *Montgomery* after originally being convicted of first-degree murder and receiving a life-without-parole sentence. According to the exhibit, Appellant falls into the group of 15% of the juvenile offenders who received a new minimum sentence in excess of 35 years' imprisonment and the amount of time they had already served. Ex. D-1, Ex. B. Appellant contends Exhibit D-1 was relevant to the sentencing court's determination of his sentence because it demonstrates the

disparity between Appellant and the great majority of similarly situated defendants and promotes uniformity and certainty in the sentencing, which, in the absence of sentencing guidelines applicable to post-***Miller*** resentencings, the Supreme Court stressed as its rationale in ***Batts II*** for directing sentencing courts to take guidance from Section 1102.1. 163 A.3d at 458. The sentencing court did not state its rationale for denying admission of Exhibit D-1 at the sentencing hearing, but the court explained in its 1925(b) opinion that the exhibit was denied because it was not relevant to the determination of an individualized sentence for Appellant. Sentencing Court Opinion, 5/16/18, at 35-36.

"The admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion." ***Commonwealth v. Clemons***, 200 A.3d 441, 474 (Pa. 2019) (citation omitted). Our standard of review of a challenge to an evidentiary ruling is therefore limited. ***Conte***, 198 A.3d at 1180. "Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." ***Id.*** (citation omitted).

The purpose of a motion for reconsideration or modification of sentence is to afford the sentencing court the opportunity to correct any errors that may have occurred at sentencing prior to appellate review. ***Commonwealth v. Burtner***, 453 A.2d 10, 12 (Pa. Super. 1982); ***see also*** Pa.R.Crim.P. 720

Comment ("As a general rule, the motion to modify sentence…gives the sentencing judge the earliest opportunity to modify the sentence."). A sentencing court has the authority to receive additional evidence upon a motion for reconsideration, but the court "is not required to afford the defendant a second opportunity to present evidence not related to any alleged error occurring at a prior proceeding." ***Burtner***, 453 A.2d at 12. "Where the sentencing procedure has been properly conducted, it is within the court's discretion whether to receive additional evidence or rely on the sentencing record." ***Id.***

In this case, Appellant offered the information regarding other resentencings of juvenile offenders in Exhibit D-1 in order to demonstrate the disparity between Appellant's sentence and other sentences rendered and to provide an additional resource to the sentencing court in reevaluating Appellant's sentence. Ex. D-1 at 1-3. The exhibit did not relate to an error at the sentencing hearing and could have been offered at that prior proceeding. Thus, the sentencing court acted within its authority in not allowing the admission of Exhibit D-1 at the hearing on the reconsideration motion. ***Burtner***, 453 A.2d at 12.

Furthermore, the sentencing court did not abuse its discretion in denying the admission of Exhibit D-1 on the basis of relevancy. Evidence is relevant "if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact." ***Clemons***, 200 A.3d at 474; ***see also*** Pa.R.E. 401. "Evidence that is not

relevant is not admissible." Pa.R.E. 402. Exhibit D-1 merely lists the sentences imposed on the other 120 juvenile offenders who were required to be resentenced for first-degree murder following **Miller** and **Montgomery**, and includes the docket sheet for each case. The exhibit does not contain any information regarding the nature of the criminal offense, the background or other characteristics of the defendant, or any other item of information that the courts in the other cases would have considered in fashioning the sentences. Consideration of merely the sentences of the 120 juvenile offenders without any information regarding the particular cases does not shed any light on the Section 9721(b) factors that the sentencing court was required to consider. The consideration of the sentences by themselves is also contrary to Pennsylvania's individual sentencing scheme, which mandates that courts consider in each case the nature and circumstances of the crime and character of the defendant rather than only looking to the mere fact of the offense committed. **Commonwealth v. Luketic**, 162 A.3d 1149, 1160 (Pa. Super. 2017). While our Supreme Court in **Batts II** instructed sentencing courts to look to the minimum sentences set forth in Section 1102.1 of the Crimes Code in resentencing juvenile offenders in order to promote the goals of uniformity and certainty, the Court recognized that uniformity in sentencing does not obviate the requirement that the sentence be individualized with respect to the factors of the particular defendant and criminal offense. 163 A.3d at 457-58.

In his final three issues on appeal, Appellant challenges the legality of his sentence. "When reviewing the legality of a sentence, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Seskey**, 170 A.3d 1105, 1107 (Pa. Super. 2017). Where a sentence is found to be illegal, it must be vacated. **Commonwealth v. Rivera**, 95 A.3d 913, 915 (Pa. Super. 2014).

Appellant's fourth appellate issue challenges the sentencing court's failure to consider the factors enunciated in **Miller** concerning the "hallmark features" of youth, including the defendant's family background, maturity level, potential for rehabilitation, and susceptibility to peer pressure or familial influence. 576 U.S. at 476-78; **see also Batts I**, 66 A.3d at 297; **Knox**, 50 A.3d at 745. Appellant contends that **Miller** and **Montgomery** command that the youth-related factors of **Miller** must be considered in every case in which a life-without-parole sentence is statutorily permissible. Appellant argues that, because the sentencing court did not address the **Miller** factors when imposing his sentence, the sentence was illegal and must be vacated.[9]

---

[9] The Commonwealth contends that this argument is a challenge to the discretionary aspects of his sentence, rather than a challenge to the legality of the sentence. However, our Supreme Court explained in **Commonwealth v. Machicote**, ___ A.3d ___, No. 14 WAP 2018 (Pa. filed April 26, 2019), that a claim that a sentence was not imposed in compliance with the substantive rule of law announced in **Miller** and **Montgomery** implicates the court's legal authority to impose such a sentence and therefore is a challenge to the legality of the sentence. **Id.**, slip op. at 14-15.

In **Batts II**, the Supreme Court established a two-part framework for the sentencing of juvenile offenders who are convicted of offenses for which a life-without-parole sentence is authorized. The Court stated that in cases where the Commonwealth requests a sentence of life imprisonment without parole for a juvenile offender, it must provide reasonable notice to the defendant and then must prove beyond a reasonable doubt that the offender "exhibits such irretrievable depravity that rehabilitation is impossible." **Batts II**, 163 A.3d at 455 (emphasis omitted) (quoting **Montgomery**, 136 S.Ct. at 733). As the Court explained, the Commonwealth may seek to meet its burden by producing evidence relevant to the **Miller** and Section 1102.1(d) factors, and the court must examine each of the **Miller** and Section 1102.1(d) factors prior to weighing whether to sentence a juvenile offender to life without parole. **Id.** at 455 & n.23.

In contrast, the Court in **Batts II** stated that in cases where a sentencing court sentences a juvenile offender to life with the possibility of parole, the sentencing court should be guided by the minimum terms of incarceration set forth in Section 1102.1(a) and apply the "traditional sentencing considerations" of Section 9721(b) of the Sentencing Code. **Id.** at 460. The Court did not impose a requirement that courts in such cases consider the **Miller** factors or the Section 1102.1(d) factors when rendering the sentence. Thus, after reviewing **Batts II**, this Court concluded in **Commonwealth v. White**, 193 A.3d 977 (Pa. Super. 2018), that "a sentencing court must consider these **Miller** factors only in cases where the

Commonwealth is attempting to meet its burden of overcoming the presumption against juvenile [life-without-parole] sentences." *Id.* at 983. In cases where the Commonwealth does not seek a life-without-parole sentence, the application of the *Miller* factors is not required. *Id.*

In *Commonwealth v. Machicote*, ___ A.3d ___, No. 14 WAP 2018 (Pa. filed April 26, 2019), our Supreme Court revisited the circumstances in which a sentencing court must consider the *Miller* factors when resentencing a juvenile offender. In that case, the appellant was originally convicted of second-degree murder in 2004 for a crime committed when he was 17 and received a life-without-parole sentence as required by Section 1102 of the Crimes Code.[10] *Id.*, slip op. at 1-2. At the appellant's resentencing hearing pursuant to *Miller* and *Montgomery*, the Commonwealth requested a life-without-parole sentence, but the sentencing court ultimately imposed a sentence of 30 years to life imprisonment. *Id.*, slip op. at 9-10. The court,

_____

[10] Section 1102 imposes a mandatory sentence of life imprisonment on offenders convicted of first- or second-degree murder. 18 Pa.C.S. § 1102(a)-(b). Though the General Assembly amended this section to make it not applicable to juvenile offenders at the time that the new sentencing scheme of Section 1102.1 was enacted, these amendments only apply to offenders who were convicted of first- or second-degree murder after the date *Miller* was decided. *Id.*; 18 Pa.C.S. § 1102.1(a), (c). Offenders convicted of first- or second-degree murder prior to *Miller* remain subject to mandatory maximum sentences of life imprisonment pursuant to Section 1102, albeit those offenders will not be subject to a life-without-parole sentence unless the sentencing court determines that they are incapable of rehabilitation pursuant to the substantive and procedural protections outlined in *Miller* and *Montgomery*. *See Machicote*, slip op. at 7-8, 15-16; *Batts II*, 163 A.3d at 445; *Batts I*, 66 A.3d at 295-97; *Commonwealth v. Ligon*, ___ A.3d ___, 2019 PA Super 96, *6 (filed March 28, 2019).

however, did not consider the *Miller* factors as they pertained to the appellant on the record at the resentencing hearing, and the appellant argued on appeal that the failure to consider the *Miller* factors rendered his new sentence unconstitutional. *Id.*, slip op. at 10-11. The Supreme Court agreed, holding that a court that performs a resentencing pursuant to *Miller* and *Montgomery* of a juvenile offender exposed to a potential life-without-parole sentence must conduct an individualized sentencing with reference to the *Miller* factors, as well as the criteria listed in Section 1102.1(d), even where the sentencing court ultimately does not impose a life-without-parole sentence. *Id.*, slip op. at 16-17. As the Supreme Court explained:

> The [sentencing] court's misstep was not considering the *Miller* factors on the record when the Commonwealth had asked for a sentence of life without parole, and when [the offender] was exposed to said sentence as a result of his conviction prior to *Miller* and the statutory language of Section 1102.

*Id.*, slip op. at 16. To not consider the *Miller* factors in such cases, according to the High Court, would "effectively nullif[y] the procedural protections set forth in *Montgomery* and solidified by this Court in *Batts II*." *Id.*

In light of our Supreme Court's decisions in *Batts II* and *Machicote* and our opinion in *White*, we conclude that the sentencing court in this matter did not err when imposing the 45-years-to-life sentence upon Appellant without considering the *Miller* factors. In this case, while the Commonwealth did initially file a notice of intent to seek a life-without-parole sentence, the Commonwealth withdrew its notice of intent with leave of the court prior to

the resentencing hearing. Notice of Intent to Seek Sentence of Life Without Parole, 7/28/17; Motion for Leave to Withdraw Notice of Intent, 9/8/17; Order, 9/14/17. This case is thus distinguishable from *Machicote* and the class of cases described in *Batts II* where the consideration of the *Miller* factors were held to be necessary because the sentencing court both had the statutory authorization to impose a life-without-parole sentence **and** the Commonwealth had requested that sentence. Accordingly, because the Commonwealth here did not seek, and the sentencing court did not impose, a life-without-parole sentence, there was no error by the sentencing court in failing to consider the *Miller* factors. *See White*, 193 A.3d at 983.

In his fifth issue, Appellant argues that his sentence of 45 years to life imprisonment, with credit for time served from the date he originally entered the correctional system, constitutes a *de facto* life-without-parole sentence. This Court has rejected similar arguments in several recent cases in which a juvenile offender originally sentenced to life without parole was resentenced following *Miller* and *Montgomery*. *See White*, 193 A.3d at 986 (35-years-to-life sentence with earliest opportunity for parole at age 52); *Commonwealth v. Bebout*, 186 A.3d 462, 469-70 (Pa. Super. 2018) (45-years-to-life sentence with earliest opportunity for parole at age 60); *Commonwealth v. Foust*, 180 A.3d 416, 438 (Pa. Super. 2018) (two

consecutive 30-years-to-life sentences).[11]  In **Foust**, following an extensive review of **Miller**, **Montgomery**, and the precedent on which they rely, we held that "a trial court may not impose a term-of-years sentence on a juvenile convicted of homicide if that term-of-years sentence equates to a *de facto* [life-without-parole] sentence unless it finds, beyond a reasonable doubt, that the juvenile is incapable of rehabilitation."  180 A.3d at 433.  We concluded that the two consecutive sentences of 30 years to life imprisonment that were imposed on the defendant in **Foust** for two first-degree murder charges must be examined separately and that viewed as such each 30 year sentence was not an unconstitutional *de facto* life sentence.  **Id.** at 434-38.  While noting that there are certain terms-of-years sentences which are clearly constitutional and others that are clearly not, we "explicitly decline[d] to draw a bright line…delineating what constitutes a *de facto* [life-without-parole] sentence and what constitutes a constitutional term-of-years sentence."  **Id.** at 438.

Our decision in **Bebout** is especially relevant here.  In that case, the defendant also received a 45-years-to-life sentence upon resentencing pursuant to **Miller** and **Montgomery**, albeit he was 15 years old at the time

---

[11] We also decided in **Commonwealth v. Felder**, No. 660 EDA 2015, unpublished memorandum at 3-9 (Pa. Super. filed Dec. 20, 2017), that a sentence of 50-years-to-life in prison issued to a juvenile offender upon resentencing following **Miller** and **Montgomery** did not constitute a *de facto* life-without-parole sentence.  Our Supreme Court has granted a petition for allowance of appeal to address our resolution of this issue.  **Commonwealth v. Felder**, 187 A.3d 909 (Pa. 2018).

he began serving his sentence and would be eligible for parole at age 60. *Bebout*, 186 A.3d at 468. This Court concluded that, in determining whether a sentence is a *de facto* life sentence, "it must at least be *plausible* that one could survive to the minimum release date with some consequential likelihood that a non-trivial amount of time at liberty awaits." *Id.* at 468 (emphasis in original). We rejected the defendant's argument based on statistical data regarding life expectancy as inconclusive, and observed that the data alone did not resolve the difficulty of devising a standard to determine when a term-of-years sentence crosses the threshold into being a *de facto* life sentence. *Id.* at 468-69. While we noted that the 45-years-to-life sentence "falls between the 'clearly' constitutional and unconstitutional parameters suggested by the *Foust* Court," we held that the defendant had failed to show that a sentence which authorized his release at age 60 was the functional equivalent of a life-without-parole sentence. *Id.* at 467, 469-70 (quoting *Foust*, 180 A.3d. at 438).

In light of our binding precedent, we conclude that Appellant has not demonstrated that he has no meaningful chance of survival until he completes his 45-year minimum sentence to enjoy his time at liberty at parole, should he be granted release. While Appellant will not be eligible for parole until age 62, two years longer than the defendant in *Bebout*, Appellant has not shown any significant difference between the ages at the earliest possible point of release that would distinguish his case from *Bebout*. Furthermore, though Appellant has cited statistical data concerning life expectancy and case law of

other states, as in **Bebout**, we must conclude that Appellant has not offered a workable standard as to what types of terms-of-years sentences are the *de facto* equivalent of life-without-parole sentences.

Finally, Appellant argues that the order of restitution in the amount of $1,000 to the heirs of the victim for the victim's funeral expenses was illegal under Section 1106 of the Crimes Code, 18 Pa.C.S. § 1106, because restitution had not been imposed in his original sentence and there was no request for restitution at the resentencing hearing.[12] The Commonwealth concedes that the award of restitution was improper, Commonwealth's Brief at 41-42, and the sentencing court agrees and requests that the award be vacated. Sentencing Court Opinion, 5/16/18, at 36.

Pursuant to Section 1106, the Commonwealth is responsible for making a recommendation to the sentencing court as to the amount of the restitution to be ordered based on information provided by the victim or other available information. 18 Pa.C.S. § 1106(c)(4)(i)-(ii). "[R]estitution is proper only if there is a direct causal connection between the crime and the loss."

---

[12] Appellant's claim that the sentencing court erred in awarding restitution where the Commonwealth made no showing that it was entitled to restitution under Section 1106 implicates the legality of the sentence rather than the discretionary aspect of the sentence. **See Commonwealth v. Weir**, 201 A.3d 163, 172-74 (Pa. Super. 2018) (drawing distinction between claims which assert that the Commonwealth did not demonstrate each of the elements under Section 1106, which implicate the sentencing court's statutory authority and thus challenge the legality of the sentence, and claims asserting that the restitution order was excessive, which implicates the discretionary aspects of the sentence).

*Commonwealth v. Harriott*, 919 A.2d 234, 238 (Pa. Super. 2007). "Because restitution is a sentence, the amount ordered must be supported by the record, and may not be speculative." *Commonwealth v. Weir*, 201 A.3d 163, 171 (Pa. Super. 2018). In addition, the amount of restitution awarded "must be determined under the adversarial system with considerations of due process." *Id.* Because, as all parties agree, the Commonwealth did not recommend restitution, there was no discussion of the propriety of a restitution award at the sentencing hearing, and there is no support in the record for the amount of restitution ordered, the portion of Appellant's sentence requiring that he pay restitution in the amount of $1,000 to the victim's heirs was in error.

"If this Court determines that a sentence must be corrected, we are empowered to either amend the sentence directly or to remand the case to the trial court for resentencing." *Commonwealth v. Benchoff*, 700 A.2d 1289, 1294 (Pa. Super. 1997). "[I]f we determine that a correction by this [C]ourt may upset the sentencing scheme envisioned by the [sentencing] court, the better practice is to remand." *Id.* (citation and quotation marks omitted). In this case, the correction does not upset the sentencing scheme and no further action is required of the sentencing court; therefore remand for resentencing is not warranted. Accordingly, we vacate the restitution portion of Appellant's sentence, and affirm the sentence in all other respects.

Judgment of sentence vacated in part and affirmed in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/10/19