J-S01006-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JACQUELYN NICOLE BAKER A/K/A | : | |
| JACQUELYN NICOLE HALL | : | |
| | : | No. 144 MDA 2023 |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered August 5, 2022
In the Court of Common Pleas of Union County
Criminal Division at No(s): CP-60-CR-0000244-2020

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.E.: **FILED APRIL 15, 2024**

Jacquelyn Baker appeals the judgment of sentence imposed by the Union County Court of Common Pleas after a jury convicted her of, *inter alia*, rape and incest. The victim was Baker's adopted son, G.B., who was 14 years old at the time of the criminal conduct. Baker argues on appeal that the trial court abused its discretion by admitting prior bad act evidence pursuant to Pa.R.E. 404(b) and by imposing an excessive sentence. She also asserts the verdict was against the weight of the evidence. These claims warrant no relief, and we therefore affirm the judgment of sentence.

---

[*] Retired Senior Judge assigned to the Superior Court.

This case originated from a ChildLine report involving Baker and G.B.[1] The report eventually led the Commonwealth to charge Baker with four counts related to an incident in 2018 involving Baker and G.B. when G.B. was 14 years old and Baker was in her 30s. Those four counts were: rape by forcible compulsion, statutory sexual assault of a complainant under 16 years of age and the perpetrator is 11 or more years older than the complainant, incest where the complainant is 13 to 18 years of age and indecent assault of a person less than 16 years of age and the perpetrator is four or more years older than the complainant. The matter proceeded to a one-day jury trial.

On the morning of trial, defense counsel made an oral motion objecting to the Commonwealth introducing a June 6, 2019, Child Advocacy Center interview with G.B. Defense counsel argued the prior bad acts contained in the interview were inadmissible under Pa.R.E. 404(b). After argument on the oral motion, the trial court denied the motion.

The Commonwealth first called G.B. to testify. G.B. testified that Baker had married his father and adopted G.B. G.B. recounted that he moved in with Baker, whom he called Mom, sometime in the beginning of the school year in 2018, when he was 14 years old. *See* N.T. 3/24/2022, at 51. G.B. told the jury that, after moving in with her, Baker started to grab his buttocks and

---

[1] The Child Protective Services Law created a statewide database of services known as the ChildLine Registry. *See* 23 Pa. C.S.A. §6331. Among other things, the ChildLine Registry contains reports of suspected child abuse. *See id.*

come into the bathroom to watch him take a shower. *See id.* at 57-58. One time, when Baker came into the bathroom while G.B. was showering, Baker told G.B. she wished he was her boyfriend. *See id.* at 58.

G.B. testified Baker would also enter his bedroom and rub his thigh. *See id.* at 59. G.B. stated that, one night, Baker came into G.B.'s bedroom and fondled his penis. *See id.* at 61. G.B. told her to stop, but Baker told him to shut up and slapped him. *See id.* According to G.B., Baker proceeded to straddle him, pull his penis out of his underwear, and have sexual intercourse with him. *See id.* at 61-62. G.B. maintained that he told Baker to stop, but she slapped him again. *See id.* at 62-63. He testified he also tried to push Baker off him, but he was not successful. *See id.* at 66.

The Commonwealth also called Stacy Brightbill, who conducted the Child Advocacy Center interview with G.B. on June 6, 2019, to the stand. The Commonwealth played the video recording of the interview for the jury. It also submitted the transcript of the interview as an exhibit. The transcript reflects that during the interview, G.B. told Brightbill that Baker had come into the bathroom when he was showering, had rubbed his thigh and had grabbed his buttocks and genitals. G.B. did not, however, disclose anything about the rape. *See* Recorded Interview of [G.B.] on June 6, 2019, at 11-14, 16-18.

Mark Bailey, who was a detective at the Mifflinburg Police Department at the relevant time, also testified. Detective Bailey stated that a ChildLine report was made in August 2020 concerning G.B. and that he was assigned

the case. Detective Bailey contacted Diane Buch at Children and Youth Services and the two scheduled a Child Advocacy Center interview for G.B. on August 27, 2020. *See* N.T., 3/24/2022, at 95-96.

Detective Bailey observed the interview through one-way glass. ***See id.*** at 96. During the interview, G.B. denied the allegations he had made against Baker. ***See id.*** However, once the interviewer left the interview room, Detective Bailey observed G.B. become very emotional and testified that G.B. just "began sobbing." ***Id.*** at 97. G.B. stated that he wanted to end the interview and leave. ***See id.*** G.B. left.

Because G.B. had become so emotional, the detective and Buch arranged for a follow-up interview with G.B. on the afternoon of August 27. Detective Bailey conducted this interview. At the interview, G.B. confirmed that Baker had, in fact, rubbed his thigh and fondled his genitals. ***See id.*** at 101. He further disclosed that in November or December of 2018, Baker entered his bedroom, rubbed his penis and then inserted his penis into her vagina. ***See id.*** at 101, 103. G.B. also told the detective that Baker had slapped his face twice during this encounter. ***See id.*** at 105.

The Commonwealth also called Jo Ellen Bowman as an expert in child behavioral responses in sexual assault cases. ***See id.*** at 131. Bowman testified generally as to the various timing and ways children may disclose incidents of sexual abuse. She stated it is not uncommon for children who

have suffered sexual assault to recant their allegations, and that it is not uncommon for male victims not to report sexual assault. *See id.* at 140, 142.

The jury convicted Baker of all four counts that had been lodged against her. The court ordered a pre-sentence investigation ("PSI") report and following a sentencing hearing, the court sentenced Baker to an aggregate sentence of eight to 25 years' incarceration. The court sentenced Baker to standard range sentences for the incest, statutory sexual assault and indecent assault convictions. However, the court found aggravating circumstances on the rape conviction, namely that the rape was of Baker's adopted child, and consequently sentenced her in the aggravated range for the rape conviction.

Baker filed a post-sentence motion, which the court denied. She then filed a notice of appeal. Both Baker and the trial court complied with Pa.R.A.P. 1925. Baker raises the following issues on appeal:

1. Did error [occur] where the court overruled the defense's Pa.R.E. 404 objection as the Commonwealth did not comport with the version of the rule in effect at the time or the version in effect shortly thereafter?

2. Was the verdict against the weight of the evidence in light of the lack of physical evidence, inconsistent victim statements and testimony regarding victim recantation?

3. Was there error in sentencing where the punishment was higher than that recommended by the Commonwealth and the Union County Probation Department?

Appellant's Brief at 5 (suggested answers omitted).

In her first claim, Baker alleges the trial court improperly denied her oral motion to preclude the Commonwealth from presenting, pursuant to Pa.R.E.

404(b), the prior bad act evidence contained in the June 6, 2019, Brightbill interview. Baker argues the Commonwealth did not provide written notice of its intent to introduce the prior bad act evidence and it should have been excluded for that reason alone. She also argues the court did not conduct an analysis balancing the probative value of the alleged bad acts against its potential for unfair prejudice before ruling the evidence was admissible. This claim fails.

Baker first complains the Commonwealth failed to provide proper notice of its intent to introduce the prior bad act evidence contained in the interview because it did not give written notice of this intent. This contention is without merit.

Rule 404(b) has a notice requirement. At the time of Baker's trial, the version of Rule 404(b)(3) in effect required the Commonwealth to give "reasonable notice in advance of trial" of its intent to introduce prior bad act evidence at trial. Pa.R.E. 404(b)(3) (effective from March 18, 2013 until March 31, 2022). More specifically, that version of Rule 404(b)(3) provided:

> In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial.

*Id.*; *See Commonwealth v. Leaner*, 202 A.3d 749, 777 (Pa. Super. 2019).

As Baker points out, Rule 404(b)(3) was amended on December 2, 2021 to require the Commonwealth to provide "reasonable written notice in advance

of trial" of its intent to introduce such prior bad act evidence at trial. This amended and current version of Rule 404(b)(3) provides in full:

> In a criminal case the prosecutor must provide reasonable written notice in advance of trial so that the defendant has a fair opportunity to meet it, or during trial if the court excuses pretrial notice on good cause shown, of the specific nature, permitted use, and reasoning for the use of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(b)(3).

This amended version of the Rule, however, did not go into effect until April 1, 2022, which was one week after Baker's trial.

Despite this effective date, Baker asserts the amended Rule should have applied to her case and the Commonwealth should have been required to give her written notice of its intent to introduce prior bad act evidence from the Brightbill interview under Rule 404(b)(3). This argument is specious. The effective date of the amended Rule is just that: the date the amended Rule became effective, in this case April 1, 2022. There is no indication that the amended Rule was meant to apply at some point prior to its effective date of April 1, 2022, and Baker cites no caselaw which would support such a retroactive application.

The version of Rule 404(b)(3) in effect at the time of Baker's trial and during discovery of this matter did not require written notice. *See Leaner*, 202 A.3d at 777 (stating that under the version of Rule 404(b)(3) in effect prior to April 1, 2022, there was no requirement that Rule 404(b)(3) notice be formally given or be in writing).

Instead, the version of the Rule in effect at the relevant time required the Commonwealth to give reasonable notice of the general nature of the prior bad act evidence found in the Brightbill interview it intended to introduce. As the trial court noted, Baker did not dispute that the Commonwealth provided her with a copy of the transcript of the Brightbill interview and a witness list that included Brightbill's name to Baker during discovery. **See** Trial Court Opinion, 7/10/2023, at 3 (unpaginated). The trial court found this constituted reasonable notice to the defense of the general nature of the evidence it planned to introduce "well in advance of trial." N.T., 3/24/2022, at 31.

Given this conclusion, the court denied Baker's motion to preclude the introduction of the Brightbill interview on the basis that the Commonwealth failed to provide proper notice under the applicable version of Rule 404(b)(3). We see no error in this determination, and Baker's cursory assertions to the contrary do not persuade us otherwise. **See Leaner**, 202 A.3d at 777 (stating that the purpose of Rule 404(b)(3) is to give notice to the defendant to prevent unfair surprise and reasonable time to prepare an objection or rebuttal to the evidence and holding that the notice requirement under the version of Rule 404(b)(3) in effect prior to April 1, 2022 was satisfied when the prior bad act evidence was provided during discovery).

Baker also argues, for the first time, that the court erred in admitting the Brightbill interview because the court did not conduct an analysis finding

that the probative value of the content of the interview outweighed its potential for unfair prejudice. This argument also fails.

As a threshold matter, we find this argument is waived. Baker did not include this argument in her Rule 1925(b) statement of errors complained of on appeal. Rather, she asserted there, as she does in her statement of questions involved in her appellate brief, that the Commonwealth "did not comport with the version of [Rule 404(b)(3)] in effect at the time or the version in effect shortly thereafter," which clearly references the argument she made above. Defendant's Statement of Errors Complained of on Appeal, 2/2/2023, at 1. She did not mention or allude to any alleged failure by the trial court to conduct the balancing test referenced above. Understandably, the trial court did not address any such argument, instead stating that the "sole issue [in Baker's Rule 404(b) claim] turned on whether the Commonwealth provided 'written notice' in advance of trial." Trial Court Opinion, 7/10/2023, at 3 (unpaginated). Given these circumstances, Baker has waived this claim. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) (holding that any issues not raised in a Rule 1925(b) statement are waived). She also did not include this argument when she objected to the evidence at the time of trial.

Even if not waived, Baker's claim that the trial court did not conduct the proper analysis before admitting the prior bad act evidence lacks merit.

- 9 -

We review a trial court's decision to admit evidence for an abuse of discretion or error of law. *See Leaner*, 202 A.3d at 777. When evidence involves "a crime, wrong, or other act," it is inadmissible to prove a person's character in order to show that the person acted in accordance with that character. Pa.R.E. 404(b)(1). Such evidence may be admissible, however, when relevant for another purpose such as proving motive, preparation, or plan. *See* Pa.R.E. 404(b)(2). It is only admissible for such a purpose in criminal cases, though, when the trial court determines that the probative value of the evidence outweighs its potential for unfair prejudice. *See id*. In this context, unfair prejudice means a "tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 *cmt*.

Here, during the argument regarding Baker's oral motion, the Commonwealth told the court that it planned to introduce the evidence of Baker's prior acts in the Brightbill interview to show how Baker groomed G.B. The trial court specifically found that "obviously[,] grooming is preparation and plan. So it clearly would be admissible under Rule 404(b)." N.T., 3/24/2022, at 26. The court also specifically noted that this prior bad act evidence was only admissible if the probative value of the evidence outweighed its potential for unfair prejudice, which the court stated clearly applied here. *See id*. at 19. Therefore, contrary to Baker's assertions, the trial court did find the Commonwealth sought to introduce the evidence for a

permitted and legitimate purpose and did conduct a balancing test which resulted in its conclusion that the probative value of the evidence outweighed the potential for unfair prejudice.

Although Baker argues only that the trial court did not conduct the balancing test at all, and therefore does not argue the trial court erred by concluding the probative value of the challenged evidence outweighed the potential for prejudice, we note that we do not discern any such error on the trial court in this regard. As such, even if this issue were not waived, it would offer no basis for relief.

Next, Baker argues the verdict was against the weight of the evidence given that G.B. recanted his allegations during one interview. This claim is also without merit.

This Court's review of a weight claim ruled on by the trial court is not a reevaluation of the underlying question of whether the verdict was against the weight of the evidence. *See Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003). Rather, our review of such a claim is limited to whether the trial court palpably abused its discretion in determining that the verdict was not against the weight of the evidence. *See id.*

A trial court will only grant a new trial on the basis that the verdict was against the weight of the evidence when the verdict is so contrary to the evidence as to shock one's sense of justice. *See Commonwealth v. Smith*, 181 A.3d 1168, 1187 (Pa. Super. 2018). It is exclusively within the province

of the jury to assess the credibility of witnesses and resolve contradictory testimony. *See Commonwealth v. Delmonico*, 251 A.3d 829, 837 (Pa. Super. 2021).

Here, in rejecting Baker's weight claim, the trial court stated:

> The victim in this matter testified that [Baker] came into his bedroom while he was living in her residence, began fondling him, extracted his penis from his boxer shorts, straddled him and inserted his penis into her vagina.
>
> ***
>
> While there was other testimony throughout the trial regarding the victim's statements, these were explained in part by the testimony of the Commonwealth's expert, Jo Ellen Bowman.
>
> Regardless, it is obvious the jury believed the testimony of the victim and the victim's testimony alone is sufficient to support the jury's verdict.

Trial Court Opinion, 7/10/2023, at 3-4 (unpaginated).

We find no palpable abuse of discretion in the trial court's determination. While Baker argues the jury should not have believed G.B. because of his recantation in one interview and because he is a "liar," and instead should have believed the defense witness who testified G.B. admitted he had lied about the assault, this argument ignores the fact that it is within the sole province of the jury to assess the credibility of witnesses. *See Delmonico*, 251 A.3d at 837. Therefore, no relief is due.

In her last claim, Baker argues the trial court abused its discretion by imposing an excessive sentence. This final claim also offers no basis for relief.

As with all appellants who challenge the discretionary aspects of their sentence, Baker is not unconditionally entitled to review of such a claim. ***See Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013). To the contrary, this Court will only review a discretionary sentencing claim if the appellant has shown she filed a timely notice of appeal, properly preserved her claim at sentencing or in a post-sentence motion, included a statement pursuant to Pa.R.A.P. 2119(f) in her brief, and raised a substantial question that her sentence is not appropriate under the Sentencing Code. ***See id.***

Although Baker offers only a skeletal Rule 2119(f) statement that borders on insufficient, the Commonwealth does not object to the statement, and we ultimately find that Baker met the first three requirements. However, we agree with the Commonwealth that Baker has not raised a substantial question.

A substantial question is one where the appellant advances a colorable argument that the sentencing court's actions were either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. ***See id.*** As the Commonwealth points out, this Court has held that a claim that a sentence was excessive, such as the one raised by Baker here, does not raise a substantial question where the sentence is within the statutory limits. ***See Commonwealth v. Jones***, 613 A.2d 587, 593 (Pa. Super. 1992) (*en banc*). As once again pointed out by the Commonwealth, Baker does not dispute her sentence was within

the statutory limits and her excessiveness claim therefore fails to raise a substantial question.

Even if we were to find that Baker raised a substantial question for our review, we would find no merit to her claim that the trial court abused its discretion in sentencing her.

Baker's sole challenge to the court's sentence is her summary complaint that her sentence was excessive as it was greater than the "suggestions" made by the Probation Department and the recommendation made by the Commonwealth. Appellant's Brief at 15. Baker does not cite to any case law in support of this contention or make any attempt to dispute the trial court's explicit admonishment that, contrary to Baker's assertions, it was "not bound by any recommendation of a party or the Probation Department" when formulating Baker's sentence. Trial Court Opinion, 7/10/2024, at 4 (unpaginated).

Instead, the Sentencing Code instructs sentencing courts to consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant" when deciding the sentence to impose on a particular defendant. 42 Pa. C.S.A. 9721(b). The balancing of these Section 9721(b) factors is within the sole province of the sentencing court. *See Commonwealth v. Lekka*, 210 A.3d 343, 353 (Pa. Super. 2019).

Baker has simply failed to establish that the trial court abused its discretion when sentencing her. ***See id.*** at 350 (stating that this Court will only disturb a sentence when we find the sentencing court committed a manifest abuse of discretion). This is especially true given that the trial court highlighted the fact that it imposed the sentence that it did after considering the crime was perpetrated on Baker's own child, that Baker showed no remorse, and that the court had ordered and considered a PSI report. ***See*** Trial Court Opinion, 7/10/2023, at 4 (unpaginated); ***Commonwealth v. Zeigler***, 112 A.3d 656, 662 (Pa. Super. 2015) (stating that when a court considers a PSI report, it is presumed that the court properly considered all relevant aggravating and mitigating factors). Once again, we find that no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/15/2024