J-S36044-21

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT SHABAZZ-DAVIS, | : | |
| | : | |
| Appellant | : | No. 51 EDA 2020 |

Appeal from the Judgment of Sentence Entered October 25, 2019
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007330-2013

BEFORE: LAZARUS, J., KING, J., AND COLINS, J.*:

MEMORANDUM BY COLINS, J.:                    **FILED JANUARY 03, 2022**

Appellant, Robert Shabazz-Davis, appeals from the judgment of sentence of an aggregate term of 38 years' to life imprisonment imposed upon his resentencing. After review, we affirm.

The resentencing court set forth the factual and procedural background as follows:

> On May 28, 2012, at approximately 2:13pm, police officers from the 22nd District responded to a radio call of a shooting at 1732 Ridge Avenue, Philadelphia, Pennsylvania, 19130. Upon arrival, officers found decedent Antwan Pack lying in a pool of blood on the floor inside the Sunshine Laundromat. Police Officer Joseph Kocher observed that decedent was in critical condition with multiple gunshot wounds to the back. Eyewitness Jeffry Noble helped police officers place Mr. Pack into a police wagon. Mr. Noble and Officer Kocher rode in the back of the wagon with decedent as he was transported to Hahnemann Hospital. Mr. Noble testified that en route to the hospital, Mr. Pack stated someone named "Rob from Highland" had shot him. Officer Kocher also testified that on the way to the hospital, Mr. Pack identified the male that shot him as "Rob." Mr. Pack was admitted

*Retired Senior Judge assigned to the Superior Court.

to Hahnemann Hospital and was taken into surgery, at around 3:00pm, in an attempt to save his life, but he was pronounced dead at 7:39pm. The autopsy report showed decedent had been shot twice in the back and suffered devasting injuries including fractures to his vertebrae, which rendered him paralyzed, and lacerations of his liver, left lung, and right lung, which prevented him from breathing and ultimately caused his death. Six fired cartridge casings and one projectile were recovered from the scene of the crime.

Eyewitness Antwyne Askew and Marcus Pough testified at trial about events that took place the day decedent was shot and killed. On June 16, 2012, Mr. Askew gave an interview to homicide detectives wherein he stated that while standing on the corner of Vineyard Street and Ridge Avenue, on May 28, 2012, he observed a male on a bicycle brandish a weapon. Seconds later, he heard gunshots. Looking the direction of the gunshots he observed, the male on the bicycle known to him as "Rob," shooting at decedent. Mr. Askew identified "Rob" as [Appellant] from a photographic array.

Resentencing Court Opinion, 4/15/21, at 3-4 (citations to the record and some quotation marks omitted).

Appellant was about three weeks shy of his seventeenth birthday at the time of the incident. On January 28, 2013, he was arrested and charged with murder and related offenses based on the foregoing. On October 29, 2014, a jury convicted Appellant of first-degree murder and firearms not to be carried without a license.[1] On March 13, 2015, the trial court sentenced Appellant to life imprisonment without the possibility of parole (LWOP) on the homicide conviction and a consecutive term of 3 ½ to 7 years' imprisonment on the firearms offense.

_____

[1] The remaining charges were *nolle prossed*.

- 2 -

Although this Court affirmed his judgment of sentence on May 8, 2017, our Supreme Court vacated and remanded to this Court for reconsideration in light of our Supreme Court's decision in **Commonwealth v. Batts**, 163 A.3d 410 (Pa. 2017) (**Batts II**).[2]  **Commonwealth v. Shabazz-Davis**, 161 A.3d 1000 (Pa. Super. 2017), *vacated by* 172 A.3d 1112 (Pa. 2017).

On remand, this Court concluded that "the reasons the trial court provided prior to imposing the judgment of sentence of life imprisonment without the possibility of parole upon Appellant were insufficient to show that it 'reach[ed] a conclusion, supported by competent evidence, that [Appellant] will forever be incorrigible, without any hope for rehabilitation.'" **Commonwealth v. Shabazz-Davis**, 183 A.3d 1091 (Pa. Super. 2018) (unpublished memorandum) (brackets in original).  Accordingly, this Court held Appellant's sentence was illegal and remanded to the trial court for resentencing in light of **Batts II**.  **Id.**

Pursuant to this Court's remand order and in compliance with **Batts II**, the trial court conducted a resentencing hearing on October 25, 2019.  That same day, the court resentenced Appellant to 38 years' to life imprisonment on the first degree murder conviction and a concurrent term of 3 ½ to 7 years' imprisonment on the firearms offense.

---

[2] We discuss **Batts II** *infra*.

This timely filed appeal followed.[3] Both Appellant and the resentencing court complied with Pa.R.A.P. 1925.[4]

On appeal, Appellant challenges the discretionary aspects of his sentence.[5] Appellant raises the following issue:

I. Did the [resentencing] court abuse its discretion in resentencing Appellant to 38 years to life imprisonment?

Appellant's Brief at 5 (suggested answer omitted and unnecessary capitalization omitted).

> A challenge to discretionary aspects of a sentence does not entitle an appellant to review as a matter of right. Rather, before this Court can address such a discretionary challenge, an appellant must comply with the following requirements:
>
> An appellant challenging the discretionary aspects of his sentence must invoke the Superior Court's jurisdiction on appeal by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 2119(f); (3)

---

[3] On April 13, 2020, this Court remanded for the court to conduct a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998). The resentencing court indicated in its opinion that it conducted a hearing on January 11, 2021, at which time Appellant withdrew his request to proceed *pro se*. Resentencing Court Opinion, 4/15/21, at 2-3 n.5.

[4] The resentencing judge has since retired. The Honorable Diana L. Anhalt authored the Rule 1925(a) opinion.

[5] To the extent the resentencing court analyzed a constitutional challenge to Appellant's sentence in its opinion, Appellant makes clear in his brief that he "is not challenging the constitutionality of the statute in this appeal as it has already been upheld; rather Appellant is solely raising a challenge to the discretionary aspects of his sentence." Appellant's Brief at 8 n.1; **see also** Resentencing Court Opinion, 4/15/21, at 4-6. While Appellant's brief does not specify to which statute he refers, we presume he is referring to 18 Pa.C.S. § 1102.1.

whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Moye*, --- A.3d ---, 1304 WDA 2020, 2021 WL 5407673, at *6 (Pa. Super. Nov. 19, 2021). (quotation and citations omitted).

Appellant filed a timely notice of appeal and included in his brief a Rule 2119(f) statement. Appellant argues in his Rule 2119(f) statement that the resentencing court failed "to properly consider sentencing factors enumerated in 42 Pa.C.S. [§] 9721, and not fully accounting for mitigation evidence." Appellant's Brief at 4. He also argues that we may exercise discretionary review because "this excessive sentence [was] based solely on the seriousness of the offense" and the resentencing court failed "to consider relevant sentencing factors." *Id.* However, Appellant failed to preserve the issue at resentencing or in a post-sentence motion. *See* N.T. (Resentencing), 10/25/19, at 49-50 (court advising Appellant of his post-sentencing rights).

By way of background, Appellant was represented by Richard T. Bobbe, III, Esquire, at trial and sentencing, on direct appeal, and at resentencing. After resentencing, Attorney Bobbe did not seek reconsideration of Appellant's sentence or file any post-sentence motions on Appellant's behalf, but he filed the instant notice of appeal on November 25, 2019. While the record is unclear as to why, on January 13, 2020, the trial court removed Attorney Bobbe as counsel and appointed Gina Amoriello, Esquire.

Shortly thereafter, on February 3, 2020, Attorney Amoriello filed in this Court an application for remand to permit the filing of a post-sentence motion challenging the sentence, explaining that it is the only issue raised on appeal and was not properly preserved by prior counsel. Application for Remand, 2/3/20, at 1-2.

This Court denied the application for remand "without prejudice to the Appellant's right to again raise the issues in the application before the panel of this Court assigned to decide the merits of the appeal by either refiling the application in writing once the case has been assigned to a panel or by raising the issues in the Appellant's brief." Order, 2/21/20. However, Appellant failed to raise the issue again in an application before this merits panel or in his brief. Thus, Appellant has waived his challenge to the discretionary aspects of his sentence. *See* Pa.R.Crim.P. 720(A)(1); ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1042 (Pa. Super. 2013) (*en banc*) (stating "issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived") (citation omitted).

In any event, even if Appellant had preserved the claim, he would not be entitled to relief. In examining whether Appellant has raised a substantial question that his sentence is not appropriate under the Sentencing Code, we are mindful of the following:

> A substantial question exists where the appellant sets forth a plausible argument that the sentence violated a provision of the [S]entencing [C]ode or is contrary to the fundamental norms of the sentencing process. On appeal, a defendant must provide, in writing, a statement specifying the following: (1) where his or her sentence falls in the Sentencing Guidelines, (2) what provision of the Sentencing Code has been violated, (3) what fundamental norm the sentence violated, and (4) the manner in which it violated the norm.

*Moye*, 2021 WL 5407673, at *7 (citations and quotation marks omitted).

As detailed above, Appellant claims in his Rule 2119(f) statement that the court imposed an excessive sentence, failed to consider mitigating factors, and did not properly apply the statutory factors set forth in 42 Pa.C.S. § 9721(b). *See* Appellant's Brief at 4. Therefore, assuming Appellant had properly preserved this issue, we would conclude he raised a substantial question. *See Moye*, 2021 WL 5407673, at *7 (holding Moye raised a substantial question where he claimed the court imposed an excessive sentence of 50 years' to life imprisonment, failed to consider mitigating factors, and did not properly apply the statutory factors in 18 Pa.C.S. § 1102.1(d) and 42 Pa.C.S. § 9721(b)) (citing *Commonwealth v. Perry*, 883 A.2d 599, 602 (Pa. Super. 2005) (excessive sentencing claim made in conjunction with assertion that court did not consider mitigating factors may raise substantial question) and *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617, 625-26 (2002) (claim of excessive sentence, even within statutory limits, may raise substantial question)).

Our standard of review regarding challenges to the discretionary aspects of sentencing is well-settled:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill-will, or arrived at a manifestly unreasonable decision.

A sentencing court abuses its discretion when it considers the criminal act, but not the criminal himself. The Sentencing Code prescribes individualized sentencing by requiring the sentencing court to consider the protection of the public, the gravity of the offense in relation to its impact on the victim and the community, and the rehabilitative needs of the defendant, and prohibiting a sentence of total confinement without consideration of "the nature and circumstances of the crime and the history, character, and condition of the defendant[.]" 42 Pa.C.S. § 9725.

The rationale behind such broad discretion and our deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

**Moye**, 2021 WL 5407673 at *7 (some citations, quotation marks, and brackets omitted).

By way of background, we have explained the following:

In **Miller** [**v. Alabama**, 567 U.S. 460, 132 S.Ct. 2455 (2012)], the United States Supreme Court held that statutory schemes such as Pennsylvania's, which imposed mandatory LWOP for certain homicide convictions, constituted cruel and unusual punishment when applied to juvenile homicide offenders. 567 U.S. at 469, 132 S.Ct. 2455. In doing so, the Court reaffirmed the principle "that children are constitutionally different from adults for purposes of sentencing. Because juveniles have diminished culpability and greater prospects for reform, [] they are less

- 8 -

J-S36044-21

deserving of the most severe punishments." ***Id.*** (internal quotation marks and citation omitted).

\* \* \*

Pennsylvania's General Assembly responded to ***Miller*** by enacting a new sentencing statute for juveniles convicted of first-degree murder after June 24, 2012. 18 Pa.C.S. § 1102.1(a). ***See*** 2012 P.L 1655. Section 1102.1(a) provides that an individual convicted of first-degree murder after June 24, 2012, who was under the age of 18 but over the age of 15 at the time of the offense, "shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life." 18 Pa.C.S. § 1102.1(a)(1). When determining whether to impose a sentence of LWOP on a juvenile convicted of murder, section 1102.1 requires a court to consider and make findings on the record regarding "the [a]ge-related characteristics of the defendant," including:

(i) Age.

(ii) Mental capacity.

(iii) Maturity.

(iv) The degree of criminal sophistication exhibited by the defendant.

(v) The nature and extent of any prior delinquent or criminal history, including the success or failure of any previous attempts by the court to rehabilitate the defendant.

(vi) Probation or institutional reports.

(vii) Other relevant factors.

18 Pa.C.S. § 1102.1(d)(7)(i-vii).

***Moye***, 2021 WL 5407673, at *2 & n.10-11 (some citation formatting altered).

In ***Batts II***, our Supreme Court required additional safeguards beyond those set forth in subsection 1102.1:

- 9 -

[T]o effectuate the mandate of ***Miller*** and ***Montgomery*** [***v. Louisiana****,* 577 U.S. 190, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016)], procedural safeguards are required to ensure that life-without-parole sentences are meted out only to "the rarest of juvenile offenders" whose crimes reflect "permanent incorrigibility," "irreparable corruption" and "irretrievable depravity," as required by ***Miller*** and ***Montgomery***.... **[W]e recognize a presumption against the imposition of a sentence of life without parole for a juvenile offender. To rebut the presumption, the Commonwealth bears the burden of proving, beyond a reasonable doubt, that the juvenile offender is incapable of rehabilitation.**

***Batts II****, **supra*** at 415-16 (emphasis added).

\* \* \*

***Batts II*** was recently abrogated by the United States Supreme Court in ***Jones v. Mississippi****,* --- U.S. ---, 141 S. Ct. 1307, 209 L.Ed.2d 390 (2021). The ***Jones*** Court confirmed that mandatory sentences of life without the possibility for juvenile offenders violate the cruel and unusual punishment clause of the Eighth Amendment of the United States Constitution, but the Court held that sentencing schemes that allow the discretionary imposition of life sentences pass constitutional muster and need not require a separate factual finding of permanent incorrigibility before doing so. ***Jones****, **supra*** at 1311. As this Court *en banc* recently explained in ***Commonwealth v. DeJesus****,* 2021 PA Super 213, --- A.3d --- (2021):

[***Jones***] reiterated the principle that a LWOP sentence for a juvenile homicide offender meets the requirements of the Eighth Amendment so long as the sentence is part of a sentencing scheme in which the sentencer has the discretion to impose a sentence less than LWOP. [***Jones****, **supra***] at 1311. In addition, the sentencing scheme only requires the sentencer to consider the juvenile homicide offender's "youth and attendant characteristics" to meet the requirements of the Eighth Amendment. ***Id.*** at 1314 (quoting ***Miller****,* 567 U.S. at 483 [132 S.Ct. 2455]). The U.S.

Supreme Court also rejected the need for the sentencer to make "an on-the-record sentencing explanation with an implicit finding of permanent incorrigibility" to be legal under the Eighth Amendment. *Id.* at 1319…. In *Batts II*, our Supreme Court interpreted the Eighth Amendment as [requiring] a sentencing court that imposes a LWOP sentence [to] make a finding, supported by competent evidence, of "permanent incorrigibility," a standard much higher than the requirement that the sentencing court consider a "juvenile's youth and attendant characteristics." Since "[i]t is beyond cavil that [Pennsylvania state courts are] bound by the determinations of the United States Supreme Court on issues of federal law, including the construction and interpretation of the federal constitution[,]" *Hall v. Pa. Bd. of Probation and Parole*, [578 Pa. 245], 851 A.2d 859, 863 (2004), we must analyze this appeal based on *Jones*. **In other words, when reviewing the legality of a sentencing court's imposition of a LWOP sentence, we may only focus on the *Jones* factors and not those espoused in *Batts II*. We consider the *Batts II* factors as part of the discretionary aspects of the LWOP sentence.**

*DeJesus*, *supra* at *6-7 (emphasis added).

*Moye*, 2021 WL 5407673, at *1-2 & n.12.

In the instant case, the resentencing court chose not to sentence Appellant to LWOP and thus, we need not review whether the court properly considered the *Jones* or *Batts II* factors.

As noted above, section 1102.1 of the Crimes Code was enacted in the wake of *Miller* and sets forth the sentences to be imposed upon juvenile offenders who are convicted of first- or second-degree murder on or after June 25, 2012, the date *Miller* was issued. Relevant to this case, a juvenile

offender convicted of first-degree murder who was under the age of 18 but was at least 15 years old at the time the offense was committed is subject to a sentence of a minimum of 35 years' and a maximum of life imprisonment. 18 Pa.C.S. § 1102.1(a)(1). Section 1102.1 does not prohibit a court from imposing a minimum sentence greater than provided in the statute. 18 Pa.C.S. § 1102.1(e). The statute also sets forth a separate set of factors that a court must consider when determining whether to sentence a juvenile offender to LWOP. 18 Pa.C.S. § 1102.1(d).  However, in cases such as this, "where the Commonwealth does not seek a LWOP sentence, the sentencing court should apply the traditional sentencing considerations under 42 Pa.C.S. § 9721(b) of the Sentencing Code when fashioning its sentence." ***Commonwealth v. Summers***, 245 A.3d 686, 693 (Pa. Super. 2021) (citing ***Commonwealth v. Lekka***, 210 A.3d 343, 355 (Pa. Super. 2019) and ***Batts II***, 163 A.3d at 484); ***see also*** N.T. (Resentencing), 10/25/19, at 16, 42-44.  In such cases, the sentencing court is not required to consider the ***Miller*** or subsection 1102.1(d) factors when rendering the sentence.  ***Lekka***, 210 A.3d at 355.  In sum, the resentencing court here was required to consider the traditional sentencing considerations under subsection 9721(b), but was not required to consider the factors set forth in subsection 1102.1(d).

Subsection 9721(b) of the Sentencing Code provides that the court shall fashion a sentence "that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and

on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). On appeal, a sentence that is within the sentencing guidelines will not be vacated unless it is "clearly unreasonable." 42 Pa.C.S. § 9781(c). We consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the opportunity of the sentencing court to observe the defendant, including any presentence investigation; (3) the findings upon which the sentence was based; and (4) the sentencing guidelines. 42 Pa.C.S. § 9781(d).

Our review of the record in this case indicates that, even if Appellant had preserved his discretionary sentencing challenge, the resentencing court did not abuse its discretion in sentencing him to an aggregate term of 38 years' to life imprisonment. The same judge sentenced Appellant at both the original sentencing and resentencing hearings. At resentencing, the court recited the facts of the case and incorporated the entire record from the original sentencing hearing, including the court's rationale for then imposing a LWOP sentence. N.T. (Resentencing), 10/25/19, at 44-45. At the original sentencing, the court considered the presentence investigation (PSI) report, Appellant's mental health evaluation, sentencing guidelines, attorneys' remarks from both sides, and the witnesses' testimony at the hearing. *Id.* at 45. A prior panel of this Court set forth the court's rationale for imposing the original sentence as follows:

- 13 -

The sentencing court [] explained to Appellant why it had ordered presentence and mental health evaluations to prepare for sentencing as follows:

> [O]ver the time that you were awaiting trial, you heard from one or more attorneys that our Supreme Court decided in **Batts** that, in essence, children are different from adults for purposes of sentence and it requires the Court to conduct what's commonly referred to as individualized consideration of mitigating circumstances, particularly the defendant's youth, before a sentence of life in prison without the possibility of parole can be imposed. That is because children lack those qualities that inure to an adult and it is their underdeveloped sense of responsibility that makes them susceptible to influences and they generally have a less fixed character than adults.
>
> So for that reason, I ordered the various reports and set the matter down for sentencing today.

[N.T. (Sentencing), 3/13/15,] at 7–8.

Prior to rendering its sentence, the sentencing court heard from the victim's grandmother, aunt, and mother, respectively. **Id.** at 17–24. The sentencing court also was introduced to various friends and family members of Appellant all of whom it noted obviously "have great love for him." **Id.** at 40. The court indicated that it had reviewed the presentence investigation report and taken into consideration all the required factors including Appellant's need for rehabilitation and society's need for protection and further stated the following:

> I've taken into consideration all the factors I'm required to, including [Appellant's] need for rehabilitation and society's need for protection. I've reviewed the presentence investigation, I've reviewed the mental health examination, and I have gone over the memorandum prepared by the Assistant District Attorney.
>
> With respect to [Appellant's] chronological age, we have referred to him as being sixteen, but he was more a seventeen year old than a sixteen year old,

- 14 -

obviously still a year and a month short of reaching his majority. But that is to be considered.

Regarding his level of maturity, he's now fathered two children. His home environment was not the best but certainly not the worst. He was co-parented at least until his father died by both his mother and his father.

I'll say this with some trepidation. I hope it doesn't come back to haunt me. But clearly, men who look like me are not in their children's lives to the degree that they should be and that causes problems, in my humble opinion.

There was nothing in the record that suggested that [Appellant] was subject to domestic violence, physical violence or sexual violence. He was the architect of this crime. He bears total responsibility for this crime. It was a vicious killing in the light of day, without any concern for the fact that somebody might see me and tell the authorities who did this.

Unlike the previous case I referenced,[6] it wasn't one on one, two men face to face. The victim was shot in the back for the sin of living in the wrong neighborhood by a young man with no underlying mental health problems, who has a history of violence and demonstrating he was not amenable to rehabilitation.[7]

_____

[6] The trial court earlier referenced a case wherein a young man had fired six shots at another in a residential community believing he had been cut off. The other individual fired back, although no one was killed. N.T. Sentencing, 3/13/15, at 38.

[7] Appellant had an extensive history with the juvenile justice system which commenced in June of 2010 when he had been adjudicated delinquent of felony robbery. Two months after he was discharged from juvenile supervision on

- 15 -

> March 22, 2012, Appellant committed the instant murder.
>
> I have heard from the family of the deceased. I've seen members of [Appellant's] family array themselves here and stand up, and it's obvious they have great love for him.
>
> Our Supreme Court has said that life in prison for a crime committed by a juvenile should be rare. It is most unfortunate that this is one of those rare cases.

*Id.* at, 3/13/15, at 38–41.

***Shabazz-Davis***, 161 A.3d 1000, 1006–08, *vacated by* 172 A.3d 1112 (Pa. 2017).

At the time of resentencing, Appellant was 24 years old. The court considered the Commonwealth's sentencing memorandum and Appellant's mitigation report prepared by the Youth Sentencing Reentry Project (YSRP). N.T. (Resentencing), 10/25/19, at 6. The offense gravity score (OGS) and Appellant's prior record score (PRS), along with the sentencing guidelines of a standard range sentence of 38 years' to life imprisonment, were placed on the record. *Id.* at 7.

The court heard defense counsel's remarks about Appellant's growth and maturity in the five years since his original sentencing, how he has adjusted well to incarceration, his involvement with programming at prison, his anticipated enrollment in a program through Villanova University to work toward a bachelor's degree, and his involvement with YSRP. *Id.* at 9-10. The court also heard counsel state the names of about a dozen family and friends

present at the hearing in support of Appellant, including his mother, sisters, and three individuals from YSRP. *Id.* at 12-13.

Next, the court heard from Appellant, who apologized to the victim's family and his own, expressed sorrow for the murder and pain it caused, and thanked the court for its support and the opportunity for resentencing. *Id.* at 15-16.

Finally, the court heard the Commonwealth read five victim impact statements and list the names of about a dozen individuals present at resentencing in support of Mr. Pack, and it heard testimony from five members of Mr. Pack's family, including his mother. *Id.* at 17-42.

Contrary to Appellant's assertion that the court did not fully account for mitigating factors, the court explicitly stated that it had considered Appellant's mitigation report. *Id.* at 45-46. The court further stated that it had given due consideration to the required minimum period of incarceration consistent with the protection of society, the gravity of the offense, and Appellant's need for rehabilitation. *Id.* at 45. The court also specified that it had duly considered the sentencing guidelines, Appellant's character and history, and underlying facts of "this heinous homicide." *Id.* The court also considered the Commonwealth's sentencing memorandum and controlling case law, noting it did not want resentencing to result in an appellate court's remand for another sentencing hearing that would "put the family through this a third

time." **Id.** at 46. The court remarked that it had "seen absolutely no remorse on the face of" Appellant. **Id.** at 46. The court continued:

> It troubles me, but I also know that both the United States Supreme Court and the Pennsylvania Supreme Court have taken into consideration when **Miller v. Alabama** was decided and **Commonwealth v. Batts** was decided that there are social scientists, medical doctors, and the like who have much greater insight into the minds of juveniles than I do, so I adopt those positions and factor in the same when I impose a sentence, especially sentences in cases such as this.

N.T. (Resentencing), 10/25/19, at 46-47. Finally, the court recommended, as defense counsel had requested, that Appellant be incarcerated at a particular prison to be close to his two small children. **Id.** at 47; **see also id.** at 10.

We discern no abuse of discretion by the resentencing court. The sentence was not excessive or "clearly unreasonable" as the court sentenced Appellant to a standard range sentence, properly considered the relevant statutory factors, and stated on the record sufficient reasons for the sentence. Thus, even if Appellant had preserved his discretionary aspects of sentencing claim, it would not serve as a basis for relief.

Judgement of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*
*Date: 1/3/2022*