J-A05040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAYTI MYERS | : | |
| | : | |
| Appellant | : | No. 195 EDA 2021 |

Appeal from the Judgment of Sentence Entered October 29, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0006654-2017

BEFORE:  LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED APRIL 20, 2023**

Rayti Myers (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of unlawful contact with a minor, endangering the welfare of a child (EWOC), corrupting the morals of a minor, and indecent assault of a person less than 13 years of age.[1]  We affirm.

The trial court recounted the evidence presented at trial as follows:

> On August 2-9, 2018, [Appellant] appeared … for [a jury] trial.  Eleven-year-old victim M.P. testified … that she used to live with her mother, [Appellant], and her two younger brothers in an apartment.  Her mother worked long hours at the airport so [M.P.] primarily was cared for by her stepfather, [Appellant].  M.P. stated that she was watching a movie on her mother's bed when [Appellant] entered the room, turned her onto her back, and put his penis into her vagina.  She stated that "white stuff" came out of his penis and that he cleaned himself off with a towel.  M.P. stated that he washed and dried the towel and then put it on the baby's crib.  She testified that the next day at school, she told her

---

[1] 18 Pa.C.S.A. §§ 6318, 4304, 6301, and 3126.

teacher that she had been raped by her stepfather. The school notified the police, who took her to the hospital to be examined. (N.T. 8/2/18, p. 56-120).

M.P. further testified that besides the rape, on numerous other occasions[, Appellant] would lick her buttocks, vagina, and nipples, touch her breasts and vagina, and put his tongue in her mouth. He also digitally penetrated her vagina with two of his fingers. [Appellant] offered her $10 to perform oral sex on him, but when she refused, he raped her. M.P. testified that [Appellant] threatened to hurt her mother if M.P. told anyone about the abuse. Despite [Appellant's] threats, M.P. stated that she had told her mother multiple times about [Appellant] touching her inappropriately, but her mother did nothing. *Id.*

M.P.'s aunt, Geneiah Moment ("Moment") testified next. She stated that she learned about [Appellant] sexually abusing M.P. on the same day that M.P. told school officials. She testified that she saw M.P. at her grandmother's house that same day and that M.P. told her about the rape and how [Appellant] had offered her money in exchange for oral sex. Moment testified that thereafter she took M.P. to a clinic to get tested for sexually transmitted diseases. (N.T. 8/3/22, 7-17).

Next, Denise Wilson ("Wilson"), Manager of Forensic Services at the Philadelphia Children's Alliance, testified that M.P. was interviewed in her office by forensic interviewer Michelle Kline. The Commonwealth then played a video recording of that interview for the jury. *Id.* at 19-31.

Police Officer Jill Cawley testified that on May 5, 2017, she received a radio call regarding a child reporting a rape at school and the police officer already on the scene was requesting a female officer to make the child feel more comfortable. At the school, Officer Cawley asked M.P. what happened, and M.P. said "her stepfather told her that he would give her $20 to suck his dick and that he bent her over and put it in her front." Officer Cawley testified that M.P. told her that her crotch hurt and that she had told her mom several times about the ongoing abuse. *Id.* at 32-45.

Dr. Maria McColgan, a board-certified child abuse pediatrician and Fellowship Director at the CARES Institute, testified next as an expert in child physical and sexual abuse[,]

with expertise in the diagnosis and treatment of child sexual abuse. She testified that M.P. was examined in the Emergency Room on May 5, 2017, and was examined again approximately one month later on June 5, 2017, at the Child Protection Program (CPP) at St. Christopher's Hospital.

Dr. McColgan had reviewed the reports from each of these visits. She testified that the examiner at the Emergency Room noted a vulva vaginal erythema, meaning a diffused redness to the outside of the vagina and vulva. She stated that this was a non-specific irritation that could be the result of anything from sexual abuse to poor hygiene. At her follow-up exam at CPP, M.P.'s examination was normal without any sign of injury or infection. Dr. McColgan testified that studies have shown this is consistent with a history of sexual abuse, even with penetration. She further testified that it is normal to not find any male DNA in a rape kit collected on a prepubescent child since there is usually a delay in reporting and the child would have wiped away any external DNA, which is where children's rape kits are swabbed. *Id.* at 49-73.

Detective Carol Farrell, Special Victims Unit, testified next. She stated that she observed via closed-circuit television the Forensic Interview Specialist's interview with M.P. Later, Detective Farrell executed a search warrant at [Appellant's] apartment, where the Crime Scene Unit took photos and collected evidence. Detective Farrell testified that she collected the clothing and rape kit from the hospital and obtained a search warrant for a buccal swab of [Appellant's] DNA. *Id.* at 84-97.

Police Officer Terry Tull, a member of the Crime Scene Unit, accompanied Detective Farrell when she executed the search warrant at [Appellant's] apartment. He testified that he took photographs of the apartment unit and recovered a bedsheet, a towel and swabbed a clear substance on the floor. *Id.* at 103-112.

Next, Police Officer Duane White testified that on May 5, 2017, he responded to a radio call regarding a "rape in progress" at Heston School, meaning that either a rape had been committed prior to the child arriving at school or while at school. At the school, he met with M.P. and a school counselor, and described M.P.'s demeanor as "dazed." He testified that when he asked M.P. what happened, M.P. told him that her stepfather had offered her

money to suck his penis and that he raped her when she refused. (N.T. 8/6/18, p. 6-15).

Ernest Drummond testified next as an expert in Forensic Science. He stated that he tested items recovered from the apartment, including a top sheet, a fitted sheet, and a towel, and that he observed semen on the towel, but none on the sheets. *Id.* at 22-32.

David Hawkins testified next as an expert in Forensic DNA Analysis. He stated that he reviewed the results of the rape kit processed, which included two swabs from M.P.'s vaginal vault. The first sample did not include any human DNA; the second sample did not contain any male DNA. He further testified that the semen observed on the towel matched [Appellant's] DNA profile. *Id.* at 42-66.

Next, Jennifer Klepesky, a caseworker at the Department of Human Services, testified that M.P. was removed from her mother's care after M.P. was discharged from the emergency room on May 5, 2017. Klepesky stated that M.P.'s mother admitted that she had known about the abuse for at least six weeks and M.P. had talked to her about it on numerous occasions, but that she relied on [Appellant] for childcare so she did nothing. *Id.* at 72-87.

At the conclusion of Ms. Klepesky's testimony, the Commonwealth entered its exhibits into evidence and rested. Defense counsel then moved for a judgment of acquittal without any argument, which th[e trial c]ourt denied. *Id.* at 93-94. [Appellant] chose not to testify and defense counsel did not produce any witnesses. The jury returned with its verdict on August 9, 2018, and found [Appellant] guilty on the following counts: Unlawful Contact with a Minor, Endangering the Welfare of a Child, Corrupting the Morals of a Minor, and Indecent Assault of a Person less than 13 years of age. The jury found [Appellant] not guilty of Rape of a Child, Involuntary Deviate Sexual Intercourse, and Aggravated Indecent Assault of a Child.

Trial Court Opinion, 6/1/22, at 3-6.

On October 29, 2018, the trial court sentenced Appellant to an aggregate 8 – 20 years of incarceration. On November 8, 2018, Appellant

filed a post-sentence motion challenging the sufficiency of the evidence, and the trial court's imposition of consecutive rather than concurrent sentences. The motion was denied by operation of law on May 8, 2019. Appellant did not appeal. However, Appellant subsequently filed an unopposed and ultimately successful petition under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546, seeking reinstatement of his direct appeal rights. On December 31, 2020, Appellant filed a notice of appeal, followed by a court-ordered concise statement of errors pursuant to Pa.R.A.P. 1925(b).

Appellant presents five issues for review:

1.  Whether the evidence presented at trial was sufficient to establish each and every element of the crimes of unlawful contact with a minor, indecent assault of a child, endangering the welfare of a child, and corruption of a minor.

2.  Whether the jury verdict was against the weight of the evidence.

3.  Whether [A]ppellant's Due Process rights were violated based on the introduction of hearsay evidence at trial.

4.  Whether the sentencing court abused its discretion by imposing a sentence that was not based upon the gravity of the violation, the extent of [A]ppellant's record, his prospect of rehabilitation, nor an assessment of the mitigating and aggravating factors as noted in 42 Pa.C.S. Section 9721 of the Sentencing Code.

5.  Whether the sentencing court imposed a manifestly excessive sentence to such a degree that the imposition of consecutive sentences establishes evidence of the court's bias or animus toward [A]ppellant.

Appellant's Brief at 8.

- 5 -

In his first two issues, Appellant challenges the sufficiency and weight of the evidence, but bases both arguments on his claim that the Victim was not credible. *See* Appellant's Brief at 16-18. For example, Appellant argues with respect to sufficiency:

> The testimony of the [Victim] failed to establish beyond a reasonable doubt every element of the unlawful contact with a minor charge, as well as the charges of corruption of a minor, EWOC, and indecent assault of a child.
>
> Her testimony was vague and inconsistent, with no detailed recollections of specific acts by [A]ppellant, or of any dependable timeframe as to dates or times of the alleged incidents. The multiple contradictions and inconsistencies, combined with her subsequent redaction and apology, definitively proves that the testimony provided at trial was fabricated and destroyed her credibility. The [Victim] was simply not credible, and no supporting physical evidence was offered to corroborate her testimony.

Appellant's Brief at 17.

Regarding the weight of the evidence, Appellant argues:

> The [jury's] guilty verdict completely ignores the lack of compelling evidence, particularly the lack of any credible testimonial evidence against [A]ppellant. The prosecution's failure to present any physical evidence to corroborate the fabricated testimony magnifies the lack of credible, substantive evidence. The evidence presented by the [Victim] was extremely vague and terribly inconsistent because the evidence was fabricated and the witnesses [*sic*] never experienced the alleged assaults. The lack of any physical evidence or medical documentation of sexual assault or unlawful contact deserves greater weight than the uncorroborated and inconsistent testimony of the complainants [*sic*].

*Id.* at 18.

The Pennsylvania Supreme Court has held that an appellant's challenge to the sufficiency of the evidence "must fail" when the appellant claims a sufficiency challenge but his argument goes to the weight of the evidence. *Commonwealth v. Small*, 559 Pa. 423, 434, 741 A.2d 666, 672 (Pa. 1999); *see also Commonwealth v. Wilson*, 825 A.2d 710, 713-14 (Pa. Super. 2003) (explaining sufficiency of evidence review does not include assessment of credibility, which is more properly characterized as challenge to weight of evidence); *Commonwealth v. Strutt*, 624 A.2d 162, 164 (Pa. Super. 1993) (stating "testimony of a sexual assault victim standing alone is sufficient weight to support a conviction."); *Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (explaining that a sufficiency challenge involves the evidence proving each material element of a crime; a weight challenge concedes the evidence is sufficient, but implicates the factfinder's credibility determinations). Accordingly, Appellant's first issue lacks merit. [2]

---

[2] Appellant's claim that the evidence was insufficient because the Victim's testimony "did not establish the elements of the crimes," is contrary to established case law. *See* Appellant's Brief at 16; *see also Commonwealth v. W.H.M.*, 932 A.2d 155, 160 (Pa. Super. 2007) (explaining claim that jury should have believed appellant's version of events rather than that of victim goes to weight, not sufficiency of evidence); *Commonwealth v. Wilson*, 825 A.2d 710, 713-14 (Pa. Super. 2003) (explaining sufficiency of evidence review does not include assessment of credibility, which is more properly characterized as challenge to weight of evidence); *Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa. Super. 1997) (stating credibility determinations are made by the finder of fact and challenges to those determinations go to the weight, not the sufficiency of evidence).

In his second issue challenging the weight of the evidence, Appellant asserts the Victim's testimony was unbelievable because it was inconsistent, uncorroborated, and fabricated. ***See*** Appellant's Brief at 17-18. The Commonwealth argues Appellant waived his weight claim because he failed to preserve it with the trial court. Commonwealth Brief at 17-18.

Pennsylvania Rule of Criminal Procedure 607 provides:

(A)     A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

Pa.R.Crim.P. 607(A)(1)-(3).

Our review confirms Appellant did not preserve this issue. ***Id.***[3] We nonetheless recognize that "one of the least assailable reasons for granting or denying a new trial is the [trial] court's conviction that the verdict was or was not against the weight of the evidence." ***Commonwealth v. Rabold***, 920 A.2d 857, 860 (Pa. Super. 2007) (citation omitted). In the absence of waiver, we would agree with the trial court's observation:

---

[3] Although Appellant's counsel made a motion for judgment of acquittal, he did so "without any argument." Trial Court Opinion, 6/1/22, at 3-6 (citing N.T., 8/6/18, at 93-94). Appellant's counsel stated: "I don't have argument. I'm just making [the motion] for the record." N.T., 8/6/8, at 93. The trial court denied the motion. ***Id.*** at 94.

> [The Victim] testified regarding numerous instances where [Appellant] touched, licked, and fondled her breasts, nipples, vagina, and buttocks. [The Victim] testified that [Appellant] kissed her and put his tongue in her mouth and that he digitally penetrated her vagina with two fingers. She further testified that he asked her to perform oral sex on him in exchange for money and that when she refused, he raped her. While the jury did not find [Appellant] guilty of rape, it did find him guilty of endangering the welfare of a child, unlawful contact with a minor, corruption of the morals of a minor, and indecent assault of a child. Based upon [the Victim's] detailed and graphic testimony, this verdict cannot be said to "shock one's sense of justice." The jury found [the Victim's] testimony regarding ongoing sexual abuse perpetrated by [Appellant] to be credible and her testimony alone is enough to sustain a conviction.

Trial Court Opinion, 6/1/22, at 17. **See also** Commonwealth Brief at 18 (concluding "even a cursory review of the record reveals [Appellant's weight] claim would be specious on its face."); **Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013) (stating that "one of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of evidence"). Appellant's second issue lacks merit.

In his third issue, Appellant argues the trial court violated his right to due process by erroneously admitting at trial inadmissible hearsay from the DHS caseworker, Ms. Klepesky. Appellant challenges the following testimony:

> [MS. KLEPESKY]: [The Victim] was removed from her mother's care after I had a conversation with her mother and in regard to her mother's knowledge about what the allegations were and what was allegedly taking place in the home.
>
> [COMMONWEALTH]: So based on your conversation with the mother, what was your assessment?

[MS. KLEPESKY]: Initially, the mother had reported to me that she had no knowledge of anything that was going on in the home, and then when I confronted her with –

[APPELLANT'S COUNSEL]: Objection, Judge. This is all hearsay.

[COMMONWEALTH]: It goes to the –

THE COURT: [excuses jury to address the issue with counsel]

N.T., 8/6/18, at 81.

Appellant's counsel argued:

I am not sure if it's relevant that the child was removed from the home [after her mother acknowledged the Victim had told her about the abuse]. It's not relevant to prove the allegations.

[And] with all due respect to the witness, [Ms. Klepesky,] it's her professional judgment that she made based on information that she got. So, if the Commonwealth wants to elicit the basis for that information for the judgment, **and the [c]ourt instructs the jury that this is not offered for the truth – to prove truth – it's only offered for the effect of the judgment of the witness. That's a good cautionary instruction**. But I didn't want it to be admitted that this must have happened as the truth, because that would be hearsay.

*Id.* at 83-84 (emphasis added).

The Commonwealth agreed with the trial court issuing a cautionary instruction. *Id.* at 85. Thus, the trial court instructed the jury:

All right, ladies and gentlemen.

You've heard the witness give some testimony concerning [the Victim] being removed from her mother's care before the objection. So, I just want to caution you that she is going to give testimony concerning why she removed the child, but that testimony is not being offered to show that it was true, but simply being offered to show why this witness took the steps that she took. So I am cautioning you that the words that the mother stated to her are not being offered for the truth of the matter, but

- 10 -

simply to show why this particular witness took the steps that she took following her discussion with the mother.

*Id.* at 86.

On appeal, Appellant argues:

Ms. Klepe[]sky testified that she interviewed [the Victim's] mother as part of her investigation, and then told the jury that [the Victim's] mother acknowledged that she was aware of the allegation of abuse made by her daughter[, the Victim,] but refused to take action because she relied on [A]ppellant to provide childcare. The [Victim's] mother did not testify at trial. The testimony of [Ms. Klepesky] was inadmissible hearsay, as it did not qualify for any of the exceptions permitted under the Pennsylvania rules of evidence. More importantly, the testimony regarding [the Victim's] mother's acknowledgement and acquiescence is false and was presented solely to prejudice the jury against [A]ppellant.

Appellant's Brief at 18-19.

The Commonwealth argues Ms. Klepesky's testimony was not hearsay because it was not offered for the truth of the matter asserted. Commonwealth Brief at 18 (stating Appellant "vaguely refers to due process" and disregards the trial court's instruction to the jury to not consider the testimony for its truth but for the effect it had on Ms. Klepesky's actions.). The Commonwealth also maintains Appellant was not prejudiced because Ms. Klepesky's testimony "did not directly implicate [Appellant,] but instead demonstrated that [the Victim's] mother was aware of [the Victim's] allegations," but did not act on them. *Id.* at 21. The Commonwealth is correct.

Hearsay is a statement "the declarant does not make while testifying at the current trial or hearing," which "a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c)(1) and (2). Hearsay is "generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." **Commonwealth v. Sandusky**, 203 A.3d 1033, 1054 (Pa. Super. 2019) (citations omitted). If an out-of-court statement is not offered for the truth of the matter asserted, the statement is not hearsay and can be admitted for a non-truth purpose. **Commonwealth v. Fitzpatrick**, 255 A.3d 452, 479 (Pa. 2021). Pertinently, an "out of court statement offered not for its truth but **to explain the witness's course of conduct** is not hearsay." **Commonwealth v. Rega**, 933 A.2d 997, 1017 (Pa. 2007) (emphasis added).

The record confirms Ms. Klepesky's testimony was not offered to prove the truth of the matter asserted, *i.e.*, that Appellant committed crimes involving the Victim. Appellant's counsel acknowledged that Ms. Klepesky's testimony related to her course of conduct. **See** N.T., 8/6/18, at 84 (Appellant's counsel stating the testimony was not hearsay if it was "only offered for the effect of the judgment of the witness.").

Moreover, the parties agreed to the trial court issuing a curative instruction. As quoted above, the trial court instructed the jury, in part: "I am cautioning you that the words that the mother stated to [Ms. Klepesky] are not being offered for the truth of the matter, but simply to show why this

particular witness took the steps that she took following her discussion with the mother." *Id.* at 86. Juries are presumed to follow the trial court's instructions, and a "trial court's curative instruction is presumed to be sufficient to cure any prejudice to [an a]ppellant." *See Commonwealth v. Thornton*, 791 A.2d 1190, 1193 (Pa. Super. 2002) (citations omitted). Appellant's third issue lacks merit.

In his fourth issue and fifth issues, Appellant challenges the discretionary aspects of his aggregate sentence of 8 – 20 years of incarceration. Appellant's Brief at 21-22 (claiming sentence "was unreasonable" where the trial court improperly "focus[ed] on" Appellant's "lack of remorse" and discounted mitigating factors; claiming sentence was manifestly excessive where trial court imposed consecutive sentences and "focused only on the allegations against [A]ppellant, including the most egregious allegations, despite the jury's complete exoneration of [A]ppellant on those charges.").

The Commonwealth argues Appellant waived both sentencing issues. The Commonwealth states:

> [Appellant] claims that he preserved the sentencing issues in a post sentence motion, but that motion raised only a challenge to the imposition of consecutive sentences; it did not include a challenge to the court's weighing of the [statutory] factors. Further, while [Appellant] preserved the challenge to the consecutive sentences in the post-sentence motion, he did not set it forth in his Pa.R.App.P. 2119(f) statement of why he believes he is raising a substantial question for the grant of discretionary review of his sentencing claim.

Commonwealth Brief at 22-23.  In the alternative, the Commonwealth argues

Appellant would not "be entitled to appellate relief in any event."  *Id.* at 23.

*See also id.* at 23-27 (Commonwealth addressing the merits of Appellant's

sentencing issues and concluding Appellant's "complaint amounts to little

more than that the [trial] court did not weigh the factors as he desired.").

Upon review, we agree Appellant has waived his sentencing issues.  An

appellant may not challenge the discretionary aspects of his sentence "as of

right."  *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super.

2014).  Rather, an appellant must satisfy a four-part test to invoke this Court's

jurisdiction.  *Id.*  An appellant has sufficiently complied with the four-part test

when:

> the appellant preserved the issue either by raising it at the time
> of sentencing or in a post[-]sentence motion; (2) the appellant
> filed a timely notice of appeal; (3) the appellant set forth a concise
> statement of reasons relied upon for the allowance of appeal
> pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a
> substantial question for our review.

*Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013) (citation

omitted).  To present a substantial question, an appellant must set "forth a

plausible argument that the sentence violates a provision of the sentencing

code or is contrary to the fundamental norms of the sentencing process."

*Commonwealth v. Dodge*, 77 A.3d 1263, 1268 (Pa. Super. 2013) (citations

omitted).

The Commonwealth has accurately explained Appellant's waiver of his

sentencing issues.  Commonwealth Brief at 22-26.  Upon review, we further

recognize the trial court's thorough and well-reasoned rejection of the substance of Appellant's sentencing issues. The trial court recited applicable legal authority in advance of explaining:

This [c]ourt sentenced Appellant to 2 to 5 years state incarceration on each charge to run consecutively, for a total sentence of 8 to 20 years state incarceration, with credit for time served. This sentence was within the standard range of the sentencing guidelines and was reasonable in light of the specific facts of this case, the significant impact of this crime on the young victim, [Appellant's] personal background and criminal history, and the protection of the public. The record shows [Appellant] repeatedly sexually abused his stepdaughter, M.P., starting when she was 7 or 8 years old. Family members testified at sentencing that M.P. suffered devastating mental and emotional trauma because of this abuse, and that despite therapy, M.P. had attempted suicide more than once and lived in a state of fear and isolation. The presentence investigation report showed that this was not [Appellant's] first instance of sexually abusing someone. Indeed, he was adjudicated delinquent when he was just 12 years old and placed on neuro-psychiatric probation supervision on a charge of involuntary deviate sexual intercourse. [Appellant's] lengthy criminal history dated back to the 1980s, mostly involving the sale of drugs. Despite multiple state and county incarcerations, as well as terms of probation and parole, [Appellant] failed to take any steps towards rehabilitation to turn his life around. At sentencing in this matter, [Appellant] did not display any remorse whatsoever and continued to deny the charges. He even blamed the child victim herself, claiming that she was the one who was touching others in an inappropriate sexual manner. (N.T. 10/20/18, p. 28).

In light of the facts of this case, the tremendous negative impact on the victim's life, [Appellant's] background, and [Appellant's] total lack of remorse, this [c]ourt properly imposed a standard range guideline sentence of 8 to 22 years state incarceration. Since this sentence was based upon the facts and circumstances of this case, and as such does not demonstrate any animus or bias towards [Appellant], no relief is due.

[Appellant] further argues that this [c]ourt abused its discretion by imposing a sentence that was not based upon the

- 15 -

factors set forth in [the Sentencing Code at] 42 Pa.C.S. § 9271. This claim is without merit. Pursuant to 42 Pa.C.S.A. § 9721(b), the sentencing court must consider (1) the protection of the public, (2) the gravity of the offense in relation to the impact of the victim and the community, (3) the rehabilitative needs of the defendant, and (4) the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing. Balancing these factors is solely within the province of the sentencing court. **Commonwealth v. Velez**, — A.3d —, * 2, 2022 WL 964170 (Pa. Super. 2022) (citing **Commonwealth v. Lekka**, 210 A.3d 343, 350 (Pa. Super. 2019)).

[T]his [c]ourt properly considered the factors set forth in 42 Pa.C.S.A. [§] 9721(b). At sentencing, this [c]ourt reviewed the PSI [(pre-sentence investigation report)], mental health evaluation, and the sentencing guidelines. This [c]ourt also read letters from [Appellant] and an anonymous supporter who asked this [c]ourt for mercy, heard argument from both counsel, listened to testimony from the [V]ictim's aunt and father, and heard from [Appellant] himself. Having presided over the trial, this [c]ourt already was keenly aware of the facts and circumstances of this case. After considering all of this information, this [c]ourt found it appropriate to sentence [Appellant] to an aggregate term of 8 to 20 years state incarceration, a sentence in the **standard** range of the guidelines. In light of [Appellant's] criminal history and the potential harm he posed to children; this sentence was necessary in order to protect the public. This sentence also was necessary due to the significant mental and emotional harm [Appellant's] heinous actions had on the young victim. The record shows that he sexually abused a little girl over the course of two to three years, putting his fingers in her vagina, licking her breasts, buttocks, and vagina, sticking his tongue in her mouth, and asking her to perform oral sex on him. [The Victim's] aunt and father both described how she continued to suffer mentally and emotionally from this ongoing abuse, and in spite of therapy, had tried to hang herself more than once. Furthermore, this sentence was appropriate based upon [Appellant's] lengthy criminal history and failure to turn his life around after multiple opportunities to do so while incarcerated and on probation/parole. After weighing the facts and circumstances of this case and considering the factors set forth in 42 Pa.C.S.A. § 9721(b), this [c]ourt properly sentenced [Appellant] to an aggregate term of 8 to 20 years state incarceration.

Trial Court Opinion, 6/1/22, at 19-22 (emphasis in original).

We would agree that, contrary to Appellant's claim, his standard-guideline-range sentence was neither excessive nor unreasonable. *See **Commonwealth v. Walls***, 926 A.2d 957, 964 (Pa. 2007) (stating "rejection of a sentencing court's imposition of sentence on unreasonableness grounds [should] occur infrequently, whether the sentence is above or below the guideline ranges."); ***Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa. Super. 2010) (stating "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code."). Also, trial court had the benefit of a PSI. We thus presume the trial court was aware of and considered all relevant factors, and "[h]aving been fully informed by the [PSI], the sentencing court's discretion should not be disturbed." ***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988). Appellant's fourth and fifth issues do not merit relief.

For the above reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 4/20/2023*

- 17 -